CATERPILLAR INC. ET AL. *v.* WILLIAMS ET AL.

No. 86–526.   Argued April 21, 1987—Decided June 9, 1987

BRENNAN, J., delivered the opinion for a unanimous Court.

*Gerald D. Skoning* argued the cause for petitioners. With him on the briefs were *Charles C. Jackson, J. Stephen Poor, Theodore R. Johnson,* and *Nancy L. Snowden.*

*Fritz Wollett* argued the cause and filed a brief for respondents.*

---

*Briefs of *amici curiae* urging reversal were filed for the Chamber of Commerce of the United States by *James C. Paras, Kingsley R. Browne,* and *Stephen A. Bokat;* for the Equal Employment Advisory Council by

JUSTICE BRENNAN delivered the opinion of the Court.

The question for decision is whether respondents' state-law complaint for breach of individual employment contracts is completely pre-empted by § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U. S. C. § 185, and therefore removable to Federal District Court.

I

At various times between 1956 and 1968, Caterpillar Tractor Company (Caterpillar) hired respondents to work at its San Leandro, California, facility. Complaint ¶¶ 10–26, App. to Pet. for Cert. (App.) A–40—A–42. Initially, each respondent filled a position covered by the collective-bargaining agreement between Caterpillar and Local Lodge No. 284, International Association of Machinists (Union). Each eventually became either a managerial or a weekly salaried employee, positions outside the coverage of the collective-bargaining agreement. Respondents held the latter positions for periods ranging from 3 to 15 years; all but two respondents served 8 years or more. App. A–97—A–98.

Respondents allege that, "[d]uring the course of [their] employment, as management or weekly salaried employees," Caterpillar made oral and written representations that "they could look forward to indefinite and lasting employment with the corporation and that they could count on the corporation to take care of them." Complaint ¶¶ 27A, 27D, App. A–43.

*Robert E. Williams, Douglas S. McDowell,* and *Garen E. Dodge;* for the Merchants and Manufacturers Association et al. by *Charles G. Bakaly, Jr.;* and for the Union Pacific Railroad Co. by *I. Michael Greenberger* and *Mark B. Goodwin.*

Briefs of *amici curiae* urging affirmance were filed for the American Federation of Labor and Congress of Industrial Organizations by *Marsha Berzon, David M. Silberman,* and *Laurence Gold;* for the Employment Law Center of the San Francisco Legal Aid Society by *Joan M. Graff, Robert Barnes,* and *John M. True;* and for the Plaintiff Employment Lawyers Association by *Paul H. Tobias.*

More specifically, respondents claim that, "while serving Caterpillar as managers or weekly salaried employees, [they] were assured that if the San Leandro facility of Caterpillar ever closed, Caterpillar would provide employment opportunities for [them] at other facilities of Caterpillar, its subsidiaries, divisions, or related companies." *Id.* ¶ 27F, App. A–48.[1] Respondents maintain that these "promises were continually and repeatedly made," and that they created "a total employment agreement wholly independent of the collective-bargaining agreement pertaining to hourly employees." *Id.* ¶ 29, App. A–49.[2] In reliance on these promises, respondents assert, they "continued to remain in Caterpillar's employ rather than seeking other employment." *Id.* ¶ 31, App. A–49.

Between May 1980 and January 1984, Caterpillar downgraded respondents from managerial and weekly salaried positions to hourly positions covered by the collective-bargaining agreement. Respondents allege that, at the time they were downgraded to unionized positions, Caterpillar supervisors orally assured them that the downgrades were temporary. *Id.* ¶ 27F, App. A–48. On December 15, 1983, Caterpillar notified respondents that its San Leandro plant would close and that they would be laid off.

---

[1] The complaint also avers that Caterpillar "made clear . . . its intention to employ [respondents] indefinitely by promoting them from entry level hourly positions to mid-level technical or weekly positions and to management positions," and by giving respondents "favorable performance evaluations," "payment increases and bonuses," and "training . . . to provide additional job security." Complaint ¶¶ 27A, 27B, 27C, App. A–43. Written representations with respect to job security were allegedly contained in employment memoranda, manuals, brochures, handbooks, and in Caterpillar's "Code of Worldwide Business Conduct and Operating Principles." *Id.* ¶ 27E, App. A–43—A–48.

[2] Under California law, an implied contract of employment may arise from a combination of factors, including longevity of service, commendations and promotions, oral and written assurances of stable and continuous employment, and an employer's personnel practices. See *Pugh* v. *See's Candies, Inc.*, 116 Cal. App. 3d 311, 327–329 (1981); *Cleary* v. *American Airlines, Inc.*, 111 Cal. App. 3d 443, 455–456 (1980).

On December 17, 1984, respondents filed an action based solely on state law in California state court, contending that Caterpillar "breached [its] employment agreement by notifying [respondents] that the San Leandro plant would be closed and subsequently advising [respondents] that they would be terminated" without regard to the individual employment contracts. *Id.* ¶ 32, App. A–49.[3] Caterpillar then removed the action to federal court, arguing that removal was proper because any individual employment contracts made with respondents "were, as a matter of federal substantive labor law, merged into and superseded by the . . . collective bargaining agreements." Petition for Removal, App. A–36. Respondents denied that they alleged any federal claim and immediately sought remand of the action to the state court. In an oral opinion, the District Court held that removal to federal court was proper, and dismissed the case when respondents refused to amend their complaint to attempt to state a claim under § 301 of the LMRA. App. A–4.

The Court of Appeals for the Ninth Circuit reversed, holding that the case was improperly removed. 786 F. 2d 928 (1986). The court determined that respondents' state-law claims were not grounded, either directly or indirectly, upon rights or liabilities created by the collective-bargaining agreement. Caterpillar's claim that its collective-bargaining agreement with the Union superseded and extinguished all previous individual employment contracts alleged by respondents was deemed irrelevant. The court labeled this argument a "defensive allegation," "raised to defeat the [respondents'] claims grounded in those independent contracts." *Id.,* at 936. Since respondents' cause of action did not require interpretation or application of the collective-bargaining agree-

---

[3] Respondents also brought state-law causes of action for breach of a covenant of good faith and fair dealing, intentional infliction of mental distress, and fraud. See Complaint ¶¶ 36–55, App. A–51—A–55. Petitioners principally rely on the breach-of-contract claim to support removal to federal court.

ment, the court concluded that the complaint did not arise under § 301 and was not removable to federal court.[4]

We granted certiorari, 479 U. S. 960 (1986), and now affirm.

## II

### A

The Court recently set forth in some detail "[t]he century-old jurisdictional framework governing removal of federal

---

[4] The Court of Appeals also appears to have held that a case may not be removed to federal court on the ground that it is completely pre-empted unless the federal cause of action relied upon provides the plaintiff with a remedy. For example, the court stated:

"[A] state law cause of action has been 'completely pre-empted' when federal law both displaces *and* supplements the state law—that is, when federal law provides both a superseding remedy replacing the state cause of action *and* preempts that state law cause of action. These are two distinct inquiries, both of which must be satisfied to permit removal of an action to federal court." 786 F. 2d, at 932 (emphasis in original; citations omitted).

This analysis is squarely contradicted by our decision in *Avco Corp.* v. *Machinists*, 390 U. S. 557 (1968). We there held that a § 301 claim was properly removed to federal court although, at the time, the relief sought by the plaintiff could be obtained only in state court. We reasoned as follows:

"The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy. . . . [T]he breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter." *Id.*, at 561.

Thus, although we affirm the Court of Appeals' judgment, we reject its reasoning insofar as it is inconsistent with *Avco.* See also *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 23 (1983) ("The Court of Appeals held, [in *Avco*,] and we affirmed, . . . that the petitioner's action 'arose under' § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available *only* under state law") (emphasis in original; citation omitted).

question cases from state into federal courts," *Metropolitan Life Insurance Co.* v. *Taylor*, 481 U. S. 58, 63 (1987) (citing *Franchise Tax Board of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1 (1983)), and we sketch only its outline here.

Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.[5] Absent diversity of citizenship, federal-question jurisdiction is required.[6] The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See *Gully* v. *First National Bank*, 299 U. S. 109, 112–113 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.[7]

Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint. Before 1887, a federal defense such as pre-emption could provide a basis for removal, but, in that year, Congress amended the removal

---

[5] Title 28 U. S. C. § 1441 provides:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

[6] Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U. S. C. § 1331.

[7] See *The Fair* v. *Kohler Die & Specialty Co.*, 228 U. S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon") (Holmes, J.); see also *Merrell Dow Pharmaceuticals, Inc.* v. *Thompson*, 478 U. S. 804, 809, n. 6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced"); *Great North R. Co.* v. *Alexander*, 246 U. S. 276, 282 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case").

statute. We interpret that amendment to authorize removal only where original federal jurisdiction exists. See Act of Mar. 3, 1887, ch. 373, 24 Stat. 552, as amended by Act of Aug. 13, 1888, ch. 866, 25 Stat. 433. Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. See *Franchise Tax Board*, 463 U. S., at 12.

There does exist, however, an "independent corollary" to the well-pleaded complaint rule, *id.*, at 22, known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co., supra*, at 65.[8] Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. See *Franchise Tax Board, supra*, at 24 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA. Section 301 provides:

---

[8] See, *e. g., Metropolitan Life Insurance Co.* v. *Taylor* (state contract and tort claims completely pre-empted by §§ 502(a)(1)(B) and 502(f) of the Employee Retirement Income Security Act of 1974, 88 Stat. 891, 892); *Oneida Indian Nation* v. *County of Oneida*, 414 U. S. 661, 675 (1974) (state-law complaint that alleges a present right to possession of Indian tribal lands necessarily "asserts a present right to possession under federal law," and is thus completely pre-empted and arises under federal law); *Avco, supra* (discussed *infra*).

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties." 29 U. S. C. § 185(a).

In *Avco Corp.* v. *Machinists,* the Court of Appeals decided that "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts." 376 F. 2d 337, 340 (CA6 1967), aff'd, 390 U. S. 557 (1968). In affirming, we held that, when "[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement," *id.,* at 558, that complaint arises under federal law:

"[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Board, supra,* at 23.

## B

Caterpillar asserts that respondents' state-law contract claims are in reality completely pre-empted § 301 claims, which therefore arise under federal law. We disagree. Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." *Electrical Workers* v. *Hechler,* 481 U. S. 851, 859, n. 3 (1987); see also *Allis-Chalmers Corp.* v. *Lueck,* 471 U. S. 202, 220 (1985). Respondents allege that Caterpillar has entered into and breached *individual* employment contracts with them. Section 301 says nothing about the content or validity of individual employment contracts. It is

true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so.

Moreover, contrary to Caterpillar's assertion, see Reply Brief for Petitioner 10, respondents' complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address the relationship between the individual contracts and the collective agreement.[9] As the Court has stated, "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers Corp., supra,* at 212.

Caterpillar next relies on this Court's decision in *J. I. Case Co.* v. *NLRB,* 321 U. S. 332 (1944), arguing that when respondents returned to the collective-bargaining unit, their

---

[9] Caterpillar contends for example, that, under California law governing implied contracts of employment, the state court will have to examine the collective-bargaining agreement as part of its evaluation of the "totality of the parties' relationship." Brief for Petitioners 35, n. 24. But respondents rely on contractual agreements made while they were in managerial or weekly salaried positions—agreements in which the collective-bargaining agreement played no part. The irrelevance of the collective-bargaining agreement to these individual employment contracts is illustrated by the District Court's disposition of the claim of Mr. Chambers, who was not in the bargaining unit at the time he was laid off. His claim was deemed solely a matter of state law (and, by implication, not intertwined with the collective-bargaining agreement), and thus was remanded to state court. See App. A–22. Moreover, it is unclear whether an examination of the collective-bargaining agreement is truly required by California law. See *Youngman* v. *Nevada Irrigation Dist.,* 70 Cal. 2d 240, 246–247, 449 P. 2d 462, 466 (1969) ("In pleading a cause of action on an agreement implied from conduct, only the facts from which the promise is implied must be alleged"); 2 J. Chadbourn, H. Grossman, & A. Van Alstyne, California Pleading § 1011, p. 159 (1961) (same).

individual employment agreements were subsumed into, or eliminated by, the collective-bargaining agreement. Thus, Caterpillar contends, respondents' claims under their individual contracts actually *are* claims under the collective agreement and pre-empted by § 301.

Caterpillar is mistaken. First, *J. I. Case* does not stand for the proposition that all individual employment contracts are subsumed into, or eliminated by, the collective-bargaining agreement. In fact, the Court there held:

> "Individual contracts cannot subtract from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the law of contracts applicable, and to the Labor Board if they constitute unfair labor practices." 321 U. S., at 339.

Thus, individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement. See *Allis-Chalmers Corp., supra.*[10] Caterpillar im-

[10] Section 301 does not, as Caterpillar suggests, require that all "employment-related matters involving unionized employees" be resolved through collective bargaining and thus be governed by a federal common law created by § 301. Brief for Petitioners 26. The Court has stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp.* v. *Lueck*, 471 U. S. 202, 211 (1985). Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301. See also *Franchise Tax Board*, 463 U. S., at 25, n. 28 ("[E]ven under § 301 we have never intimated that any action merely relating to a contract

permissibly attempts to create the prerequisites to removal by ignoring the set of facts (*i. e.*, the individual employment contracts) presented by respondents, along with their legal characterization of those facts, and arguing that there are different facts respondents might have alleged that would have constituted a federal claim. In sum, Caterpillar does not seek to point out that the contract relied upon by respondents is in fact a collective agreement; rather it attempts to justify removal on the basis of facts not alleged in the complaint. The "artful pleading" doctrine cannot be invoked in such circumstances.[11]

Second, if an employer wishes to dispute the continued legality or viability of a pre-existing individual employment contract because an employee has taken a position covered by a collective agreement, it may raise this question in state court. The employer may argue that the individual employment contract has been pre-empted due to the principle of exclusive representation in § 9(a) of the National Labor Relations Act (NLRA), 29 U. S. C. § 159(a). See *Machinists* v. *Wisconsin Employment Relations Comm'n*, 427 U. S. 132, 146 (1976) (quoting *Teamsters* v. *Morton*, 377 U. S. 252, 260 (1964)) (NLRA pre-empts state law that "'upset[s] the balance of power between labor and management expressed in our national labor policy'"). Or the employer may contend that enforcement of the individual employment contract arguably would constitute an unfair labor practice under the NLRA, and is therefore pre-empted. See *San Diego Build-*

---

within the coverage of § 301 arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract").

[11] Cf. *Federated Department Stores, Inc.* v. *Moitie*, 452 U. S. 394, 410, n. 6 (1981) (BRENNAN, J., dissenting) (Although "occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, . . . most of them correctly confine this practice to areas of the law pre-empted by federal substantive law") (internal quotations omitted).

*ing Trades Council* v. *Garmon*, 359 U. S. 236 (1959) (state law that infringes upon the National Labor Relations Board's primary jurisdiction over unfair labor practice charges is preempted). The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court.[12]

Finally, Caterpillar argues that § 301 pre-empts a state-law claim even when the employer raises only a defense that requires a court to interpret or apply a collective-bargaining agreement. Caterpillar asserts such a defense claiming that, in its collective-bargaining agreement, its unionized employees waived any pre-existing individual employment contract rights.[13]

It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule — that the plaintiff is the master of the

---

[12] Caterpillar also contends that enforcement of individual employment contracts negotiated with employees covered by the collective-bargaining agreement would violate § 9(a) of the NLRA, 49 Stat. 453, 29 U. S. C. § 159(a), because, with exceptions not here relevant, it is an unfair labor practice "for the employer to disregard the bargaining representative by negotiating with individual employees, whether a majority or a minority, with respect to wages, hours, and working conditions." *Medo Photo Supply Corp.* v. *NLRB*, 321 U. S. 678, 684 (1944). Even if these individual employment contracts were negotiated with respondents *while* the latter were covered by a collective agreement (which is disputed), this fact is irrelevant to the removal question. For reasons similar to those stated in text, see *supra*, at 394–397, and this page, respondents' state-law claims might be pre-empted by the NLRA, but they would not be transformed into claims arising under federal law.

[13] We intimate no view on the merits of this or any of the pre-emption arguments discussed above. These are questions that must be addressed in the first instance by the state court in which respondents filed their claims.

complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.[14] If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal. See *supra*, at 392, and n. 5, 392–393.[15]

## III

Respondents' claims do not arise under federal law and therefore may not be removed to federal court. The judgment of the Court of Appeals is

*Affirmed.*

---

[14] See, *e. g.*, *Cook* v. *Georgetown Steel Corp.*, 770 F. 2d 1272 (CA4 1985); *Medlin* v. *Boeing Vertol Co.*, 620 F. 2d 957 (CA3 1980).

[15] Caterpillar contends that the Court of Appeals' decision offends the paramount national labor policy of referring disputes to arbitration, since its collective-bargaining agreement with the Union contains an arbitration cause. Brief for Petitioners 36. This argument presumes that respondents' claims are arbitrable, when, in fact, they are alleged to grow out of individual employment contracts to which the grievance-arbitration procedures in the collective-bargaining agreement have no application.