**J.H.W. SR., INC., et al.**

v.

**EXXON COMPANY, U.S.A., a division of Exxon Corporation.**

**Civil Action No. DKC 96–359.**

United States District Court,
D. Maryland.

April 5, 1996.

Harry C. Storm, Bethesda, MD, for plaintiffs.

Neil J. Dilloff, H. Mark Stichel, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Defendant, Exxon Company, U.S.A., a division of Exxon Corporation, ("Exxon"), removed this action from the Circuit Court for Montgomery County, contending that some of Plaintiffs'[1] claims arise under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.* Plaintiffs have moved to remand, asserting that their complaint contains only state law claims that are not preempted by the PMPA and that, in any event, removal is improper because reliance on the PMPA as a defense does not confer removal jurisdiction. After considering the written submissions of the parties, and hearing argument on April 1, 1996, the court concludes that removal jurisdiction is lacking. Accordingly, the case will be remanded to the Circuit Court for Montgomery County.

## BACKGROUND

Plaintiffs' claims fall into two discrete categories: challenges to the rental provisions of their franchise agreements and attacks on fuel rates. Exxon asserts that only the former are subject to preemption. The rent claims contain the following allegations:

Each plaintiff leased its retail service station pursuant to a three year lease/franchise agreement. Exxon represented to each franchisee that "rents were determined through a 'market value' system whereby Exxon sets rents that were reasonable when compared to the fair market value of the property." (Complaint ¶ 14). Despite this representation, plaintiffs contend that Exxon "inflated the values of its properties, equipment and

---

1. Plaintiffs are eleven current or former franchisees of Exxon.

improvements for rental calculation purposes" in order to extract "unreasonable and above-market rents from its dealers." (Complaint ¶ 15). Plaintiffs seek damages and reformation of the contracts on theories of breach of contract, breach of the covenant of good faith, and breach of fiduciary duty.

A typical franchise agreement was submitted to the court at the hearing. The provisions for rent are contained in Article 3. A monthly amount is set forth to be applicable for the first twelve months, followed by permitted increases of a maximum amount for each succeeding twelve-month period. A notice of rent change during the lease gives the lessee the right to object and obtain a redetermination through a procedure employing appraisals of the fair market value. Also, if no rent redetermination has occurred within the past twelve months, a lessee may obtain a redetermination, again through the process of obtaining an appraisal. A separate agreement appears to provide that the lessee could use the redetermination procedure to challenge the setting of the base rent as well.

Plaintiffs argue that Exxon waived any right it had to remove the case by the filing of an answer and counterclaim in the state court. Further, as stated above, Plaintiffs dispute whether the PMPA provides a basis for removal. Exxon, of course, asserts that it has not waived its right to seek removal and that the PMPA completely preempts Plaintiffs' claims, justifying federal removal jurisdiction.

### ANALYSIS

#### Waiver

█ At the same time that it filed its notice of removal in the Circuit Court for Montgomery County, Exxon also filed its answer and a permissive counterclaim in the Circuit Court. Plaintiffs assert that this filing evidenced Exxon's intent to invoke the jurisdiction of the state court and was thus a waiver of the right to remove the action to federal court. In assessing this argument, the court must be mindful that, absent unequivocal evidence of a defendant's desire to abandon the federal forum, a waiver by conduct ought not be found. *Estate of Krasnow v. Texaco, Inc.,* 773 F.Supp. 806, 808

(E.D.Va.1991) ("A waiver must be clear and unequivocal.")

At the hearing, Exxon's counsel indicated that the reason for filing the answer and counterclaim along with the removal papers was to hedge against later events that might have made their filing more difficult. Because the court finds removal jurisdiction lacking, it is not necessary to decide whether Exxon also waived its right to removal.

#### Preemption

█ The Fourth Circuit, in *Rosciszewski v. Arete Assoc., Inc.,* 1 F.3d 225 (4th Cir.1993), recently clarified the framework for assessing whether a case removed to federal court meets the jurisdictional requirements:

> In order to determine if an action arises under federal law, we must apply the well-pleaded complaint rule. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). This rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* Because "[t]he well-pleaded complaint rule applies to the original jurisdiction of the district courts as well as to their removal jurisdiction," *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 10 n. 9, 103 S.Ct. 2841, 2847 n. 9, 77 L.Ed.2d 420 (1983), a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law" in pleading its case, *Caterpillar Inc.,* 482 U.S. at 392, 107 S.Ct. at 2429.

Generally, federal preemption is a defense to a plaintiff's action, and as such, "it does not appear on the face of a well-pleaded complaint." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Consequently, it "does not authorize removal to federal court." *Id.* In certain circumstances, however, "the pre-emptive force of [federal law] is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.,* 482

U.S. at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co.*, 481 U.S. at 65, 107 S.Ct. at 1547). This so-called complete preemption occurs when "an area of state law has been [so] completely pre-empted, [that] any claim purportedly based on th[e] pre-empted state law is considered ... a federal claim." *Id.*[4] When state-law claims are completely preempted by federal law, the plaintiff's complaint arises under federal law and removal is proper. *See Metropolitan Life Ins. Co.*, 481 U.S. at 67, 107 S.Ct. at 1548.

[4] The Supreme Court has found complete preemption in only a few situations—for example, claims alleging a breach of a collective bargaining agreement that fall under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C.A. § 185 (West 1978), *see Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968), and claims for benefits or enforcement of rights under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 *et seq.* (West 1985 & Supp.1993), *see Metropolitan Life Ins. Co.*, 481 U.S. at 63–67, 107 S.Ct. at 1546–48.

*Rosciszewski*, 1 F.3d at 231. Unlike the waiver issue, the burden is on Exxon, the party asserting the existence of federal jurisdiction, to establish the necessary predicate for removal.

The following is the PMPA's preemption provision:

To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a)(1) (1982 & Supp.1996).

I conclude that the PMPA does not completely preempt the entire field of state law otherwise applicable to the franchise relationship. The Supreme Court has "recognized the existence of complete preemption in only three instances: under Section 301 of the Labor Management Relations Act, under Section 1132 of ERISA, and with regard to certain tribal claims." 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3522 (1984 & Supp.1995) (footnotes omitted). I have not found any appellate decision holding that the PMPA is another statute with such extreme reach. Indeed, the available decisions are to the contrary. One unpublished case, *Yorn v. Union Oil Co. of California*, 952 F.2d 408 (Table), No. 90–16386, 1992 WL 2872 (9th Cir. Jan. 7, 1992), holds that the PMPA is *not* an instance of complete preemption:

Only where Congress has "clearly manifested an intent," to render any pleading having to do with a particular subject matter removable to federal court should a court invoke the complete pre-emption doctrine. "[E]ven an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction."

Nothing in the text or the legislative history of the PMPA demonstrates a congressional intent to pre-empt the entire law relating to service-station franchises....

. . . .

This language indicates that Congress intended to allow states a role in regulation and enforcement provided the applicable law was the same as the federal law. We conclude that the PMPA lacks the complete pre-emptive force necessary to recharacterize Yorn's action as federal and to justify its removal to federal court. While the PMPA may provide Unocal with a viable pre-emption defense to Yorn's common law claims, it is for the California courts to make this determination in the first instance.

The second limited exception to the general principles of federal question jurisdiction and the well-pleaded complaint rule is that embodied in the "artful pleading" doctrine....

1992 WL 2872 at *1–2 (citations and footnote omitted). Because the claim did not fit within that circuit's interpretation of the artful pleading doctrine, the court found subject matter jurisdiction lacking and the case was remanded to state court. *See also, State Oil Co. v. Khan,* 839 F.Supp. 543 (N.D.Ill.1993) (remanding action for forcible entry and detainer originally brought by franchisor in state court where PMPA presents only a defense.); *Sun Refining & Marketing Co., Inc. v. D'Arpino,* 112 F.R.D. 668 (S.D.N.Y. 1986) (remanding eviction action to state court, finding defense of preemption under PMPA irrelevant to determination of removal jurisdiction).

■■■ Despite the fact that the Fourth Circuit has stated that "Congress used very broad language to define the PMPA's preemptive scope," *Mobil Oil Corp. v. Virginia Gasoline Marketers & Automotive Repair Assoc.,* 34 F.3d 220, 225 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995), its sweep is not all inclusive. There are many aspects of the franchisor/franchisee relationship that are subject to state law. *Wingard v. Exxon Co., U.S.A.,* 819 F.Supp. 497, 501–502 (D.S.C. 1992). Nothing in the primary cases relied on by Exxon requires a different conclusion.

In *Mobil Oil,* among the state law provisions found to be preempted was one that required that rents be "based on commercially fair and reasonable standards" and "uniformly applied to similarly situated dealers of the same refiner in the same geographic area." 34 F.3d at 223. The court concluded, in a declaratory judgment action brought by Mobil Oil in federal court, that this rental control provision was "with respect to" nonrenewal because it gave franchisees ground to challenge nonrenewals that are valid under the PMPA which only requires a franchisor to act "in good faith and in the normal course of business" in setting rents, and not to act "for the purpose of preventing the renewal." 34 F.3d at 225–26. The context in which that issue was decided, however, is extremely important: Mobil Oil brought suit seeking both a declaratory judgment that the Virginia statute was unconstitutional and an injunction against its enforcement. Because the provision of the law *could* affect grounds for termination or nonrenewal, the majority struck it down.

This case is procedurally very different from *Mobil Oil.* The franchisees in the case at bar did not contest the rent provisions and invoke PMPA provisions concerning the renewal process. Allowing their state claims to proceed in state court neither precludes reliance on a PMPA preemption defense nor does it risk affecting grounds for nonrenewal or termination in the future.

To accept Exxon's position here would result in the danger forecast by Chief Judge Ervin in his dissent in *Mobil Oil:*

My greatest concern with the majority opinion stems not from what it says, but rather from what it suggests by implication.

... [U]nder this theory, any changes in state law, not just those particular to the petroleum franchise scenario, that affect the substance of these contract relationships must be struck down (at least as to petroleum franchisees) because they narrow the grounds for termination. There are numerous areas of state law that control a franchise agreement, all of which are subject to this same analytic structure, and thus eligible for limitation.

34 F.3d at 230.

Exxon also relies heavily on a decision of the Ninth Circuit, *Simmons v. Mobil Oil Corp.,* 29 F.3d 505 (9th Cir.1994). In *Simmons,* the franchisee signed a renewal in 1988, but terminated the lease and abandoned the station in 1990. He sued under the PMPA and various state law claims. The court held that the PMPA claims were barred by the one year statute of limitations. The court further found that the state law claims based on rent structure were preempted:

If Simmons was dissatisfied with the rent proposed by Mobil in the August 1988 agreement, the proper remedy would have been to refuse to sign the agreement and to bring an action under the PMPA for nonrenewal of the franchise agreement. Simmons could have alleged that the rental increases were changes to the provisions of

the franchise that were not made in good faith and in the normal course of business. 29 F.3d at 512. Simmons, though, sued in federal court and did attempt to invoke the termination provisions of the PMPA. The court's conclusion that his remedy under the PMPA should have been invoked earlier again illustrates the use of the PMPA as a defense, and does not herald its reach as completely preemptive.

■ In the Fourth Circuit, the artful pleading exception has been recognized, but must be applied sparingly. Judge Haden, in *Spaulding v. Mingo County Bd. of Educ.,* 897 F.Supp. 284 (S.D.W.Va.1995), reviewed some of the cases:

> Under the artful pleading doctrine, a plaintiff cannot defeat removal by omitting an essential federal question from the complaint. *Burda v. M. Ecker Co.,* 954 F.2d 434 (7th Cir.1992); *Ontario v. City of Detroit,* 874 F.2d 332 (6th Cir.1989) ("As a general rule, well-pleaded complaints which are filed in state court are not removable. However, a complaint that does not set forth a federal question on its face is removable where a plaintiff has artfully pleaded its claims in order to avoid federal jurisdiction of claims that are federal in nature, or where the state law claims are completely preempted by federal law."); *Shiffler v. Equitable Life Assur. Soc. of U.S.,* 609 F.Supp. 832 (E.D.Pa.1985); *M. Nahas & Co. v. First Nat'l Bank of Hot Springs,* 930 F.2d 608 (8th Cir.1991) (removal was proper where plaintiff asserted state violations of usury laws where Congress had created an exclusive federal remedy.).

897 F.Supp. at 288.

Similarly, Judge Anderson recognized, but rejected, an artful pleading argument in *Cheshire v. Coca–Cola Bottling Affiliated, Inc.,* 758 F.Supp. 1098 (D.S.C.1990):

> To this end, the "artful pleading" doctrine has developed as an exception to the rule limiting the court's examination to the face of the complaint when it appears the plaintiff seeks to conceal the federal nature of his claim by fraud or obfuscation. *Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. 566, 572 (N.D.Calif.1981). In

determining whether a complaint is "artfully pleaded," the court may look behind it, or "peek," to ascertain facts that would appear in a well-pleaded complaint. *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D.N.Y.1980).

> Application of the artful pleading doctrine is most appropriate in cases where federal law altogether preempts and supplants state law, but plaintiff seeks to avoid the effect of preemption by pleading only state causes of action. *See, Avco Corp. v. Aero L[o]dge No. 735, International Association of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

758 F.Supp. at 1100.

Plaintiffs have not resorted to obfuscation in this case. They clearly intend to rely on state law, albeit for claims that may be subject to the preemption defense. The PMPA applies to termination or nonrenewal, neither of which has occurred here. Thus, the court concludes that, based on the face of the complaint, no federal cause of action is pled and the case must be remanded to the state court.

A separate Order will be entered.

### ORDER OF REMAND

For the reasons set forth in the foregoing Memorandum Opinion, it is this 5th day of April, 1996, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiffs' Motion for Remand BE, and the same hereby, IS GRANTED;

2. This case BE, and the same hereby, IS REMANDED to the Circuit Court for Montgomery County;

3. Pursuant to 28 U.S.C. § 1447(c), the Clerk will mail a certified copy of this ORDER, the foregoing Memorandum Opinion, and all other necessary papers to the Clerk, Circuit Court for Montgomery County;

4. The Clerk will close this case; and

5. The Clerk will mail copies of this Order and the Memorandum Opinion to counsel for the parties.