John **VANDENBERGH**, Plaintiff,

v.

**SWEDISHAMERICAN HEALTH SYSTEM, et al.,** Defendants.

No. 97 C 7635.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 21, 1998.

Anthony DiVincenzo, Campbell & DiVincenzo, Chicago, IL, for Plaintiff.

John Williams, Lord, Bissell & Brook, Chicago, IL, John J. Holevas, Williams & McCarthy, Bradley T. Koch, Eugene G. Doherty, Holmstrom & Kennedy, P.C., Rockford, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This Court has just received reassignment from Judge James Alesia's calendar of this action—an action pregnant with three sets of undecided motions:

1. one by plaintiff John Vandenbergh ("Vandenbergh") to remand the action to its place of origin, the Circuit Court of Cook County;

2. motions by defendant SwedishAmerican Health System and SwedishAmerican Hospital (collectively "SwedishAmerican") and by defendant Trkla, Pettigrew, Allen & Payne, Inc. ("Trkla Firm"), each seeking to dismiss Vandenbergh's Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6); and

3. a joint motion by SwedishAmerican and Trkla Firm for transfer of this action to the Western Division of this

Northern District of Illinois under 28 U.S.C. § 1404(a).[1] This Court obtained the file in this case yesterday, and it has reviewed all of the parties' submissions with care. For the reasons stated in this memorandum opinion and order, Vandenbergh's motion is granted, so that the motion for Section 1404(a) transfer has been rendered moot, but the motions to dismiss remain pending to be addressed by the Circuit Court after the remand.

There is no question that the initial removal of this action from the Circuit Court to this District Court could not properly be predicated (as defendants. Notice of Removal ("Notice") ¶¶ 3 through 8 would have

had it) on diversity of citizenship grounds. Although the parties are indeed of diverse citizenship and although the requisite over–$75,000 amount in controversy is at stake, Section 1441(b) prohibits removal on diversity grounds where as here any defendant is an Illinois citizen (indeed, in this case all three defendants are). Unsurprisingly, then, defendants' joint response in opposition to Vandenbergh's remand motion has caved in, retreating from what defendants had originally said in the Notice on that score (Joint Response 1–2).

But Notice ¶¶ 9 through 12 also assert federal-question jurisdiction as an alternative ground for removal. In those paragraphs defendants point to a pending bankruptcy proceeding in the Western Division, *In re King Arthur Partners,* Case No. 95–B–52628. What defendants say is that the subject matter of Vandenbergh's claim really belongs to the debtor, King Arthur Partners, and not to Vandenbergh. That argument may or may not be valid, but Vandenbergh's *own* allegations in the Complaint support the notion that he himself is not the injured party (that is, assuming the validity of his allegations, as must be done for this purpose). Instead he alleges that defendants interfered with "a new entity to be known as King Arthur Partners Limited" (Complaint ¶ 11)—as Vandenbergh himself describes it, his position in the proposed transaction was not personal but purely derivative (*id.*):

> Plaintiff was to own the controlling interest in the new entity. The new entity had arranged to finance the acquisition of the property through Nomura Asset Management ("Nomura"). Nomura issued a firm commitment to finance the Camelot Tower in October, 1996. Plaintiff had a reasonable expectation of completing the transaction with Nomura enabling the new entity to acquire the Camelot Tower.

To be sure, Complaint ¶ 12 then goes on to refer colloquially to "Nomura's commitment to finance the plaintiff's acquisition of the Camelot Tower," Complaint ¶ 15 refers in an equally imprecise way to SwedishAmerican's "false representations as part of a scheme to disrupt plaintiff's acquisition of the Camelot

---

1. All further references to Title 28's provisions will simply take the form "Section—."

Tower" and Complaint ¶ 19 similarly refers to defendants' interference with the Nomura relationship as "preventing plaintiff from completing the acquisition of Camelot Tower." But all of that reflects sheer looseness on the part of Vandenbergh's counsel in referring to "plaintiff's acquisition" as kind of a shorthand (and inaccurate) characterization of the *actual* proposal—one that the *express* allegations of Complaint ¶ 11 describe as the form that the claimed proposed deal was to take, in which a partnership entity in which plaintiff would have a controlling interest would acquire the property in question.

But from the perspective of the properly controlling legal analysis, all of that—whether the real party in interest in the claims advanced in the Complaint ought perhaps to be the debtor, King Arthur Partners, or instead a newly formed (or to be formed) limited partnership having that same name with "Limited" tacked on at the end—is really beside the mark. What has happened in the course of the parties' briefing is that they have been tilting at windmills in quarreling about who owns any claim that might exist against SwedishAmerican and Trkla Firm, meanwhile totally losing sight of what controls for removal and remand purposes.

In that respect the critical fact is not that defendants may perhaps be right that the claims of tortious interference with advantageous relationships and tortious interference with contract set out in the Complaint, if they are viable at all, may belong to debtor King Arthur Partners rather than to Vandenbergh individually—or even that the fair reading of the allegations is that the to-be-formed King Arthur Partners Limited entity, a limited partnership, rather than Vandenbergh individually properly owns those claims. What controls instead is that the first of those alternatives—ownership by the bankrupt debtor—surely does not form the gravamen of Vandenbergh's claim *as he has asserted it.* Instead what defendants urge in that regard is only a *defense* to Vandenbergh's claim, a potential basis for its dismissal under Rule 12(b)(6) or on some other ground.

It is of course black-letter law that (except in situations of complete or "field" preemption, which is not at issue here), removal on federal-question grounds is a func-

tion of the claim as the *plaintiff* has framed it, not of how the defendants may seek to defend against it. Though it would easily be possible to cite literally hundreds of cases so holding, it is enough for present purposes to cite just a few. Thus, as our Court of Appeals has said in *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993) (numerous citations omitted):

> Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. Any doubt regarding jurisdiction should be resolved in favor of the states, and the burden of establishing federal jurisdiction falls on the party seeking removal. One measure of the limited scope of the removal power is the well-established doctrine that a case may not be heard in district court when the only federal question posed is raised by a defense argument, even if the plaintiff anticipated the defense argument and even if both parties concede the federal question is the only real issue in the case. There is no dispute that the district court lacked diversity jurisdiction in this case, meaning that the court only had subject matter jurisdiction if it was able to pluck a legitimate federal question out of the filings. Courts usually determine jurisdiction based on a well-pleaded complaint. Indeed, a plaintiff may avoid federal court even though certain federal questions may be implicit in his or her claim.

In addition to that language, which might well have been written for this case, see such recent Supreme Court opinions as *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987) (cited in *Doe* ), *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 840–41, 109 S.Ct. 1519, 1520–21, 103 L.Ed.2d 924 (1989) (per curiam) and other cases cited in each of those decisions.

Accordingly, to quote the dispositive language of Section 1447(c) with the addition of an appropriate adverb, "it [plainly] appears that the district court lacks subject matter jurisdiction." That being so, Section 1447(c) mandates the remand of this action to the state court from which it emanated. It is therefore ordered that this action be remanded to the Circuit Court of Cook County, and

in accordance with the procedure permitted by this District Court's General Rule 30(B) the certified copy of the remand order shall be mailed forthwith.[2]

**2.** As stated earlier, defendants. Section 1404(a) motion is denied as moot, while their motions to dismiss remain with the case on remand.