PACIFIC MARITIME ASSOCIATION,
Plaintiff,

v.

Richard MEAD, Defendant.

No. C 02–5614 VRW.

United States District Court,
N.D. California.

Feb. 24, 2003.

Matthw Kumin, Matthew Kumin Law offices, San Francisco, CA, for plaintiff.

Charlene M. Walker, Susan J. Pixler, Lillick & Charles, San Francisco, CA, for defendants.

## ORDER

WALKER, District Judge.

Pacific Maritime Association (PMA) filed a Petition of Employer for Injunction Prohibiting Violence or Threats of Violence against Employee against Richard Mead (Mead) in San Francisco superior court on November 6, 2002. See Not of Rem (Doc # 1), Exh A. The petition alleges that Mead physically attacked Dana Walton (Walton), a "joint dispatcher" employed at a dispatch hall partly operated by PMA. Id. at 1–2. The extent to which Walton is an employee of PMA and what sources the court would need to consult to make that determination are the primary issues in dispute.

A temporary restraining order issued against Mead on November 6, 2002. See Woodhouse Decl (Doc # 5), ¶ 3. And a hearing was set for November 27, 2002. See Walton Decl (Doc # 6), Exh 2. On November 26, 2002, Mead timely removed the matter to this court, alleging that PMA's state court petition is completely preempted by § 301 of the Labor Management Relations Act (LMRA) and so raises a federal question. See 29 USC § 185.

PMA now moves to remand. Doc # 3. For the reasons detailed below, PMA's motion to remand (Doc # 3) is GRANTED. Because the court finds this matter suitable for determination without oral argument, the court VACATES the hearing scheduled for February 20, 2003. See Civ LR 7–1(b).

## I

PMA is "a multi-employer association of steamship, stevedoring and terminal operating companies doing business on the West Coast of the United States." See Edwards Decl (Doc # 4), ¶ 2. Its principal business is the negotiation and administration of maritime labor agreements between the International Longshore and Warehouse Union and itself (ILWU). Relations between PMA and the ILWU are governed by the Pacific Coast Longshore Contract Document (the contract). Id, ¶ 3. Under the terms of the contract, PMA and ILWU share joint responsibility for the operation of a dispatch hall where Walton is employed as a "joint dispatcher." Id, ¶¶ 3–4; see Walton Decl (Doc # 6), ¶¶ 2, 4. According to Walton, she is a joint employee of PMA and ILWU. Id, ¶ 2. Mead is a registered member of the ILWU, Local 10, currently serving as its president. Id, ¶ 3.

Walton alleges that on November 3, 2002, just before 8:00 pm, Mead entered her office, grabbed her personal keys and demanded to know whether he could use them to open his office. Id, ¶¶ 4–5. Walton retrieved her keys from Mead at which time Mead grabbed and twisted her wrist, forcing her to drop the keys. Id, ¶ 6. After trying various keys in the door to the joint dispatcher's office, Mead found one that opened the lock. Id, ¶ 7. Walton then retrieved her keys from the lock. Id, ¶ 8. Mead lunged at Walton and grabbed her, twisting her arm and jumping on her back while yelling, "Give me the fucking key, bitch!" Id, ¶ 9. Walton filed a complaint with the police and was then taken to California Pacific Medical Center for treatment. Id, ¶ 13. Since this incident, Walton continues "to suffer from severe neck pain and shooting pains in my lower back." Id, ¶ 14.

It was this incident that precipitated PMA's petition for injunctive relief to protect Walton from Mead.

## II

■ "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 USC § 1447(c). On a motion for remand for lack of subject matter jurisdiction, the non-moving party, in this case Mead, bears the burden to identify a legitimate source of the court's jurisdiction. See *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Disputed questions of fact and ambiguities in the controlling law must be resolved in favor of the remanding party. See *id.* If the court grants a motion to remand, it is within the court's discretion to order the removing party to pay "just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 USC § 1447(c).

Mead removed this action alleging federal question jurisdiction. See Not of Rem (Doc # 1), ¶ 5; see also 28 USC § 1331. The basis for removal is § 301 of the LMRA, which by its language and subsequent judicial interpretation, completely preempts a wide range of state law claims. See id., ¶ 13; 29 USC § 185. Specifically, § 301 preempts claims the determination of which require an interpretation of the terms of a collective bargaining agreement. See 29 USC § 185.

■ Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without re-

spect to the amount in controversy or without regard to the citizenship of the parties.

29 USC § 185. The Supreme Court has held that § 301 implicitly authorizes the development of a federal common law governing the interpretation of collective bargaining agreements and the preemptive scope of § 301. See *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Local 174, Teamsters of America v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Section 301's preemptive force extends to any claim the resolution of which "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Preemption of such claims is complete. See *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

■ In determining whether a state law claim is preempted by § 301, the court examines whether that claim "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The Ninth Circuit, in *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683 (9th Cir. 2001), articulated the framework for the court's analysis. "The plaintiff's claim is the touchstone for [the] analysis; the need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiffs' claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense." *Id.* at 691 (citing *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. 2425). Thus, "[i]f the plaintiff's claim cannot be resolved without interpret-

ing the applicable [collective bargaining agreement,] * * * it is preempted." *Id.* (internal citation omitted). "Alternatively, if the claim may be litigated without reference to the rights and duties established in a [collective bargaining agreement,] * * * it is not preempted." *Id.* (internal citation omitted). In short, "[a] state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Id.* at 693.

■ In applying this standard, "a court may look to the [collective bargaining agreement] to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption," for example. *Id.* at 692. Similarly, in *Gregory v. SCIE, LLC*, 317 F.3d 1050 (9th Cir.2003), the Ninth Circuit held that the determination whether the results of a method for calculating overtime rates and hours comported with state law was not preempted by § 301, because that determination did not "involve[ ][any] issue concerning the *method* of calculation," but simply the determination whether the resulting calculations complied with the terms of state law. *Id.* at 1053. By contrast, a dispute over the alleged mishandling of a grievance proceeding by a law firm employed by a union was adjudged to be preempted, because the determination whether the firm committed malpractice rested on the determination whether the firm had in fact misapplied a transfer of work provision of the union's collective bargaining agreement. See *Dahl v. Rosenfeld*, 316 F.3d 1074, 1078 (9th Cir.2003). That issue, in turn, rested on the determination what conduct triggered the transfer of work provision of the agreement, a question the resolution of which depended on identifying the proper

interpretation of the terms of the agreement. See *id.*

PMA's petition for injunctive relief was filed under § 527.8 of the California Code of Civil Procedure, which provides that

[a]ny employer, whose employee has suffered unlawful violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee prohibiting further unlawful violence or threats of violence by that individual.

Cal Civ Pro § 527.8(a). "For purposes of this section, the terms 'employer' and 'employee' mean persons defined in Section 350 of the Labor Code." Cal Civ Pro § 527.8(d). Section 350 of the California Labor Code defines "employer" as "every person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other basis." Cal Labor § 350.

### III

The court begins, then, with PMA's petition for a temporary restraining order and injunction against Mead, the "touchstone" for the court's analysis. See *Cramer,* 255 F.3d at 691. In the petition, PMA identifies itself as Walton's joint employer. See Not of Rem (Doc # 1), Exh A at 1. PMA identifies Mead as a member and current president of ILWU, Local 10. See *id.* The petition then recites the factual basis for injunctive relief and identifies the precise forms of relief sought. See id. at 2–3.

Mead offers two reasons to support his claim that PMA's state law claims as expressed in the petition require the interpretation of the contract, and so are preempted by § 301. First, he argues that to establish whether PMA is an employer as defined by section 350 of the California Labor Code, the court will be required to interpret the terms of the contract. Mead contends that PMA's hybrid nature, as a multi-employer association the primary aim of which is to engage in collective bargaining on behalf of its member employers, brings into question its legal status as Walton's employer under California law. See Mead Opp (Doc # 10) at 4. And Mead argues that the question of PMA's status as an employer can only be resolved by recourse to the interpretation of the contract.

Second, Mead argues that the factual issues raised by the petition are identical to those at issue in a dispute between PMA and Mead before a contract-approved arbitrator. In those proceedings, PMA is attempting to have Mead "deregistered," making him ineligible for work in west coast ports. See id. at 5–6. Mead argues that permitting PMA "to litigate the identical factual issues in state court" is tantamount to allowing PMA to "circumvent[ ] its obligations to exhaust the grievance and arbitration procedures under Section 17.15 of the collective bargaining agreement." Id. at 5–6. Mead nowhere provides a copy of that section of the labor agreement, nor does he cite to any document within the record that contains a copy of section 17.15.

■ Addressing Mead's second argument first, the court sees no basis in that argument for an assertion of federal jurisdiction. Mead's contention appears to be that PMA should be permitted to pursue its claims against Mead only before the arbitrator and not in parallel judicial proceedings. As stated, that argument bears on whether it is appropriate for PMA to obtain any judicial relief for Walton, whether in state or federal court, from the

alleged conduct of Mead. It does not bear on the question whether this court has jurisdiction over PMA's petition for injunctive relief based on § 301 preemption.

The question before the court is whether it or the state court is the proper forum in which PMA should pursue the injunctive relief it seeks. Whether Mead is eventually deregistered from service in coastal ports for the same conduct PMA alleges supports its petition is neither here nor there. The fact that those parallel proceedings before an arbitrator are ongoing cannot advance Mead's argument that PMA's petition, filed under California state law, necessarily requires an interpretation of the terms of the collective bargaining agreement.

■ Turning now to the more substantial of Mead's arguments, the court concludes that Mead has not adequately demonstrated that resolution of the issues raised in PMA's petition will require the interpretation of the terms of the contract. The California Code of Civil Procedure is clear that to determine what persons and entities count as employers under § 527.8 the appropriate authority is § 350 of the California Labor Code. See Cal Civ Pro § 527.8(d). That section defines the term "employer" broadly to encompass a wide range of employment relationships, including those maintained by business owners and concessionaires, as well as those conducted on any "other basis." Cal Labor § 350(a). Similarly, the term "employee," as therein defined, includes "every person * * * rendering actual service in any business for an employer." Cal Labor § 350(b).

The contract language to which Mead points is not implicated in the analysis a court would be required to undertake to assess whether PMA can be properly identified as Walton's employer for purposes of California state law. The contract provisions Mead cites relate to the union's portion of the expenses of maintaining the dispatch hall in which Walton works and the rules and regulations governing personnel working in the dispatch hall. See Not of Rem (Doc # 1), Exh D. The terms of those provisions are not sufficiently related to PMA's petition to warrant the conclusion that PMA's petition is preempted by § 301. They represent rather "[a] creative linkage between the subject matter of the claim and the wording of a [contract] provision * * * insufficient" to support a claim of § 301 preemption. *Cramer*, 255 F.3d at 692.

"If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense." *Id.* at 691 (citing *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. 2425). PMA's claim is plainly so based. Mead's asserted defense involves parsing different statutory definitions of "employer" differently. While Mead contends that PMA *is* an employer as defined by the Labor Management Relations Act, he contends that PMA cannot be reliably identified as an employer for purposes of California state law without reference to the terms of the contract. See Not of Rem (Doc # 1), ¶ 6. Mead cites to portions of the contract that indicate the somewhat unusual nature of the arrangement between PMA and the ILWU in managing the dispatch hall, but does not present a persuasive argument that these provisions either should or would determine whether PMA is an employer under California law. In other words, "the proffered interpretation" of the contract fails to "reach a reasonable level of credibility" to support the conclusion that plaintiff's petition for injunctive relief is preempted by federal labor law. *Cramer*, 255 F.3d at 692.

For these reasons, the court concludes that it lacks jurisdiction to hear PMA's petition for injunctive relief against Mead because there is no federal question raised in that petition. PMA's motion to remand (Doc # 3) is GRANTED accordingly.

## IV

■ Upon granting a motion to remand for lack of subject matter jurisdiction, the court may award "just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 USC § 1447(c). To award fees, the court need not find that the removal was frivolous, vexatious or otherwise attempted for an improper purpose. See *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th Cir.1992). Such an award is intended rather to serve the statutory purpose of more generally reducing the possibility of abuse, unnecessary expense or harassment that can attend an improper removal. See, e g, *Circle Industries USA, Inc. v. Parke Construction Group, Inc.*, 183 F.3d 105, 109 (2nd Cir.1999).

■ As discussed above, Mead's arguments in favor of § 301 preemption of PMA's state law claims are inadequate. The portions of the contract to which he cites neither directly nor even indirectly relate to the question whether PMA is Walton's employer under California law for purposes of pursuing injunctive relief on her behalf. Interpretation of the contract is not, therefore, part of the inquiry the court must conduct to make sense of the claims contained in PMA's petition, even if the contract's language may ultimately prove relevant to a proper analysis of Mead's defenses.

Because the interpretation of PMA's state law petition does not "require[ ] the interpretation of a collective-bargaining agreement" and because Mead has identified no provision of the contract that calls this conclusion into question to even a minimal extent, the court concludes that an award of costs and fees is appropriate. *Lingle*, 486 U.S. at 413, 108 S.Ct. 1877. Because the information on costs and fees contained in the Woodhouse Declaration does not detail PMA's costs and fees with requisite specificity, PMA shall file an itemized list of fees and costs, along with an appropriate declaration verifying the amounts listed, on or before March 27, 2003. See Woodhouse Decl (Doc # 5), ¶ 5; Amended Woodhouse Decl (Doc # 8), ¶ 5.

## V

In sum, PMA's motion to remand (Doc # 3) is GRANTED. This action is hereby REMANDED to San Francisco superior court for all further proceedings. The court also awards PMA its fees and costs, pursuant to 28 USC § 1447(c). PMA shall file and serve a list of the costs incurred in moving to remand this action on or before March 27, 2003.

IT IS SO ORDERED.