Jerome **GIDDENS**, et al., Plaintiffs,

v.

**HOMETOWN FINANCIAL SERVICES,** et al., Defendants.

Civil Action No. CV–96–A–490–E.

United States District Court, M.D. Alabama, Eastern Division.

Sept. 24, 1996.

Ernest C. Hornsby, Jr., Morris, Haynes, Ingram & Hornsby, Alexander City, AL, for plaintiffs.

John V. Denson, II, Amy J. Himmelwright, Samford, Denson, Horsley, Pettey & Martin, Opelika, AL, for Hometown Financial Services, Inc., Farmers National Bank.

W. Michael Atchison, Allan R. Wheeler, Starnes & Atchison, Birmingham, AL, for First Colonial Insurance Company.

James A. Byram, Jr., Charles M. Crook, Balch & Bingham, Montgomery, AL, for American Modern Home Insurance Company.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

This cause is now before the court on a Motion to Remand, filed by Jerome Giddens, Timothy Lee Huguley, and Connie Easteridge (collectively referred to as "the Plaintiffs") on April 11, 1996.

### I. FACTS

Between February 1994 and June 1995, the Plaintiffs financed the purchase of their respective vehicles through Hometown Financial Services, Inc. ("Hometown"), a wholly-owned subsidiary of Farmers National Bank ("Bank"). At the time of purchase, Hometown, as an agent of First Colonial Insurance Company ("Colonial"), sold vehicle single-interest ("VSI") insurance to each Plaintiff.[1] The Plaintiffs contend that an agent of Hometown fraudulently sold the VSI insurance to them and others similarly situated by misrepresenting or suppressing the type and amount of insurance coverage on their vehicles, and by violating Alabama insurance licensure law.[2]

On February 26, 1996, the Plaintiffs, individually and as a class action on behalf of others similarly situated, filed this action in the Circuit Court of Chambers County, Alabama. In their complaint, the Plaintiffs seek a declaratory judgment and damages under Alabama statutory law and common law for fraud in the issuance and collection of VSI insurance premiums. Named as the Defendants in the action are Hometown, Bank, Colonial, and American Modern Home Insurance Company (collectively referred to as "the Defendants").

On May 20, 1996, the Defendants filed a Notice of Removal asserting that jurisdiction was properly vested in federal court pursuant to 28 U.S.C. §§ 1446, 1441, and 1331. The Defendants contend that the Plaintiffs' claims present a federal question because the claims require the application of the National Bank Act of 1864 ("NBA"), 12 U.S.C. §§ 21 et seq. On April 11, 1996, the Plaintiffs filed a Motion to Remand contending that this case presented only state-law fraud claims.

For the reasons stated below, this court finds that the Motion to Remand is due to be GRANTED.

### II. STANDARD FOR REMAND

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). As such, they have the power to hear only those cases that they have been authorized to hear by Con-

---

1. VSI insurance, also known as vendor single-interest insurance, is a type of credit-related property damage insurance which insures the lender against loss or damage to personal property in which the lender has a security interest as a result of a loan.

2. The Plaintiffs contend that the Defendants violated Alabama Code § 27-7-5(7) because Hometown sold VSI insurance to the Plaintiffs and Hometown is also the insured under these policies.

gress or by the Constitution. *See Kokkonen,* 511 U.S. at ——, 114 S.Ct. at 1675. In the Eleventh Circuit, the law favors remand where federal jurisdiction is not absolutely clear. *See Burns,* 31 F.3d at 1095. Thus, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Id.*

## III. *DISCUSSION*

### A. The Well–Pleaded Complaint Rule

 Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a). Federal question jurisdiction depends on whether the "action aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, a court must look to the face of the complaint to determine whether a claim "arises under" federal law. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Because the well-pleaded complaint rule makes "the plaintiff the master of the claim," a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Thus, removal jurisdiction may not be sustained simply because a plaintiff could have asserted a federal claim instead of or in addition to the state claim advanced. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986). Similarly, "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430.

The Defendants contend that the Plaintiffs' claims present a federal question because the claims require the application of the NBA. Notably, however, although the NBA includes civil liability provisions (12 U.S.C. § 86), the Plaintiffs' complaint, on its face, does not state a claim under these or any other federal provisions. Moreover, the fact that the Defendants may have a pre-emption

defense does not alone authorize removal. Accordingly, this court finds that the Plaintiffs have not pleaded a claim "arising under" federal law and jurisdiction is lacking on that basis.

### B. The "Complete Pre-emption" Doctrine

 An exception to the well-pleaded complaint rule exists if the area of the state-law claim asserted in the complaint has been "completely pre-empted" by federal law. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* This exception rests on the notion that in certain rare instances "the pre-emptive force of the statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). Because a state-law claim that is completely pre-empted arises under federal law, it is removable from state to federal court. *Whitman v. Raley's Inc.,* 886 F.2d 1177, 1181 (9th Cir.1989).

 The Defendants contend that the Plaintiffs' state-law claims are "completely pre-empted" by §§ 85 and 86 of the NBA because the Plaintiffs seek recovery for usurious interest charges. The Defendants reason that the alleged fraudulent issuance and collection of VSI insurance premiums resulted in compensation for Hometown in connection with the Plaintiffs' underlying loan. As such, the Defendants contend that the VSI insurance premiums actually should be treated as interest compounded on the Plaintiffs' loans. The Defendants contend that the Plaintiffs state a claim under the NBA for usurious interest charges, and, accordingly, the Plaintiffs' cause is subject to removal based on federal question jurisdiction.

The Bank is a national bank subject to the NBA. Because Hometown is a wholly-owned subsidiary of the Bank, Hometown qualifies as an operating subsidiary under the NBA.

12 C.F.R. § 5.34(c). As an operating subsidiary, Hometown is also subject to the NBA. 12 C.F.R. § 5.34(d)(2)(i). Therefore, as potentially applicable to the Defendants' alleged acts complained of by the Plaintiffs, this court needs to determine whether §§ 85 and 86 of the NBA "completely preempt" the Plaintiffs' state-law claims against the Defendants.

The NBA provides, in part, that a national bank "may ... charge on any loan ... *interest* at the rate allowed by the laws of the State ... where the bank is located...." 12 U.S.C. § 85 (emphasis added). The NBA further provides, in part, penalties for violating this interest limitation, including "forfeiture of the entire interest", and the right to "recover back ... twice the amount of interest thus paid...." 12 U.S.C. § 86.

■ "Complete pre-emption" differs from ordinary pre-emption. The inquiry for "complete pre-emption" is jurisdictional in nature and focuses on whether Congress intended to make the plaintiff's cause of action federal and removable despite the fact that the plaintiff's complaint only pleads state claims. *Whitman*, 886 F.2d at 1181. The inquiry for ordinary pre-emption is substantive in nature and focuses on whether a legal defense exists. *Id.* This latter inquiry is a matter to be made by a court having jurisdiction. *Id.*

■ The Supreme Court has found "complete pre-emption" of state-law claims only in rare circumstances where "the pre-emptive force of the statute is so 'extraordinary.'" *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (quoting *Metropolitan*, 481 U.S. at 65, 107 S.Ct. at 1547). These "extraordinary" circumstances have been found only in relation to the Labor Management Relations Act of 1947 ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"). *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (§ 301 of the LMRA "completely pre-empted" a state cause of action for violation of contracts between an employer and a labor organization); *Metropolitan*, 481 U.S. 58, 107 S.Ct. 1542 (§§ 502(a)(1)(B) and 502(f) of ERISA "completely pre-empted" state contract and tort claims).

■ In *Avco* and *Metropolitan* and in the cases that followed them, three factors have been identified as critical to a finding of "complete pre-emption." First and perhaps most important, because "the touchstone of the federal district court's removal jurisdiction is ... the intent of Congress," *Metropolitan*, 481 U.S. at 66, 107 S.Ct. at 1548, the courts have concluded that there should be evidence of a congressional intent to make the state claim falling within the scope of the relevant federal statute removable to federal court. In *Metropolitan*, the Supreme Court found a congressional intent to allow removal of ERISA cases in the legislative history's statement that "All such actions in Federal or State courts are to be regarded as arising under the laws of the United States." 481 U.S. at 65–66, 107 S.Ct. at 1547 (quoting H.R.Conf.Rep. No. 93–1280 at 327 (1974)). *See also id.* at 68, 107 S.Ct. at 1548 (Brennan, J., concurring) ("In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court") (emphasis in original); *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 586 (6th Cir.1990) (there must be evidence of clear congressional intent to permit removal despite the plaintiff's exclusive reliance on state law); *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir.1989) (same); *Aaron v. National Union Fire Ins. Co. of Pittsburg*, 876 F.2d 1157, 1163 (5th Cir.1989) (same), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990).

Second, it is not sufficient that the federal law pre-empt the state-law claim; the federal law must also "displace" the state-law claim with a cause of action. In *Metropolitan*, the Supreme Court found "complete pre-emption" because the "state common law claims are not only preempted by ERISA but also displaced by ERISA's civil enforcement provision." 481 U.S. at 60, 107 S.Ct. at 1544. *See also Allstate*, 879 F.2d at 93 ("The doctrine of complete pre-emption applies only ... when the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the

plaintiff's cause of action seeks to vindicate"); *Willy v. Coastal Corp.,* 855 F.2d 1160, 1165 (5th Cir.1988) ("a federal action cannot be found to so completely displace state claims ... unless there would have been a federal cause of action under the pre-empting federal law"), *aff'd on other grounds,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992).

Lastly, the jurisdictional and enforcement provisions in the LMRA or ERISA must have a close parallel in the federal claims at issue. In *Metropolitan,* the Supreme Court emphasized that, even with ERISA's extensive civil enforcement provisions, it "would be reluctant to find that extraordinary pre-emptive power," 481 U.S. at 65, 107 S.Ct. at 1547, but for the fact that ERISA's civil enforcement provisions closely paralleled those in the LMRA, a statute where the Court had previously found such power. *Id. See also Aaron,* 876 F.2d at 1165 ("The LHWCA contains no specific jurisdictional grant similar to those found in ERISA and the LMRA").

The Defendants cite several cases holding that §§ 85 and 86 of the NBA "completely preempt" state-law claims challenging "interest" charged by a national bank, and thus that such claims are removable from state to federal court. *See, e.g., M. Nahas & Co. Inc. v. First Nat'l Bank of Hot Springs,* 930 F.2d 608 (8th Cir.1991); *Moss v. Southtrust Mobile Services,* civil action no. 95–P–1647–W (N.D.Ala. Sept. 22, 1995) (Pointer, J.); *Hunter v. Rich's Dep't Store,* civil action no. 95–PT–1548–S (N.D.Ala. Aug. 31, 1995) (Propst, J.). However, case law is split over whether the NBA "completely pre-empts" state-law claims challenging "interest." *See, eg., Spellman v. Meridian Bank (Delaware), N.A.,* 1995 WL 764548 (3d Cir. Dec. 29, 1995); *Copeland v. MBNA Am.,* 820 F.Supp. 537 (D.Colo.1993). More significantly, the cases relied upon by the Defendants are not directly on point on the issue before this court: whether the NBA "completely pre-empts" state-law claims challenging "insurance premiums" charged by national banks.

The NBA does not define the term "interest." Because the term "interest" is ambiguous with respect to insurance premiums, this court will defer to the reasonable interpretation of the term by an agency charged with administering the NBA. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). The Supreme Court has observed that the Comptroller of the Currency " 'is charged with the enforcement of banking laws to an extent that warrants the invocation of [the rule of deference] with respect to his deliberative conclusions as to the meaning of these laws.' " *Smiley v. Citibank (South Dakota), N.A.,* —— U.S. ——, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 810, 813, 130 L.Ed.2d 740 (1995).

On February 9, 1996, the Comptroller of the Currency adopted a regulation defining the term "interest" as used in § 85 of the NBA to include the following: "any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended"; and, with regard to "fees connected with credit extension or availability[,] ... numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees." 61 Fed.Reg. 4869 (to be codified in 12 C.F.R. § 7.4001(a)).

In *Smiley v. Citibank (South Dakota), N.A.,* —— U.S. ——, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), the Supreme Court held that the Comptroller's regulation interpreting "interest" to include late-payment fees is reasonable and entitled to deference. —— U.S. at ——, 116 S.Ct. at 1736. In the same regulation at issue in *Smiley,* the Comptroller indicated that the term "interest" "does *not* ordinarily include ... premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit." 61 Fed.Reg. 4869 (to be codified in 12 C.F.R. § 7.4001(a)) (emphasis added). Therefore, it reasonably could be concluded that, under the Comptroller's definition, insurance premiums are not only not pre-empted or "completely pre-empted," they are not even covered by the NBA.

The Defendants counter that a fraudulent insurance premium could be viewed as "in-

terest" and thus as falling within the coverage of §§ 85 and 86 of the NBA. This argument is rejected for several reasons. First, the Plaintiffs do not claim that the challenged insurance premiums are "interest". As stated, the plaintiff is "the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429. Second, if the Defendants' argument were accepted, then all insurance premiums charged by national banks would be subject to regulation under the NBA. If the Comptroller (whose definition of "interest" is entitled to deference, *Smiley*, —— U.S. at ——, 116 S.Ct. at 1736) had intended this sweeping result, he would have stated so and he would not have adopted a definition of "interest" that expressly excludes insurance premiums. Third, if it is debatable whether a state-law claim challenging a national bank's interest charges is "completely pre-empted," *contrast M. Nahas & Co. Inc. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608 (8th Cir.1991) *with Spellman v. Meridian Bank (Delaware), N.A.*, 1995 WL 764548 (3d Cir. Dec. 29, 1995), then a state-law claim challenging a national bank's insurance premium (which is not covered by the NBA) surely is not "completely pre-empted." Finally, there is no evidence of congressional intent, expressed or implied, to make state-law claims based on insurance premiums removable to federal court.[3] Moreover, it cannot be reasonably argued that the NBA's regulations covering insurance premiums are similar to the civil enforcement and jurisdictional provisions in the LMRA and ERISA—indeed, it cannot be argued that there is any NBA regulation of insurance premiums at all. This court, therefore, cannot reach the "extraordinary" but necessary finding that a defense to insurance premiums charged by national banks should be equated to "complete pre-emption." *See, e.g., Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (some but not all of ERISA claims are "completely pre-empted").

The Plaintiffs' have alleged only state-law fraud claims. As "masters of the claim," the Plaintiffs may avoid federal jurisdiction by relying exclusively on state law. Accordingly, this court finds that the Plaintiffs have not pleaded a claim "arising under" federal law and jurisdiction is lacking on that basis.

With this conclusion, however, this court has *not* held that the Plaintiffs' state-law claims are not pre-empted by the NBA. This court merely has held that there is not such "complete pre-emption" as would support removal to federal court. After remand, the state court still independently may conclude that §§ 85 and 86 of the NBA pre-empt the Plaintiffs' state-law claims. *Glasser v. Amalgamated Workers Union Local 88*, 806 F.2d 1539, 1540 (11th Cir.1986) (per curiam); *Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 408–09 (5th Cir.1991); *see also Franchise Tax Bd.*, 463 U.S. at 12–14 & n. 12, 103 S.Ct. at 2848 & n. 12 (where federal court lacks removal jurisdiction, state court should determine whether pre-emption defense has merit).

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Remand is due to be and is hereby GRANTED, and it is hereby ORDERED that this case is REMANDED to the Circuit Court of Chambers County, Alabama. The Clerk is directed to take the necessary steps to effect the remand.

It is further ORDERED that the motion to dismiss, filed by the defendants Hometown and Bank on March 25, 1996, is left for disposition by the state court after remand.

---

3. Because the NBA was enacted in 1864, before the "complete pre-emption" doctrine originated, it would be impossible to find any expressed evidence of congressional intent. However, one still could look to implicit evidence of such intent.