Johnnie Mack SMITH and Brenda Brooks, Plaintiffs,

v.

BENEFICIAL NATIONAL BANK USA; et al., Defendants.

Civil Action No. 96–D–1726–E.

United States District Court, M.D. Alabama, Eastern Division.

Jan. 30, 1997.

514

Thomas J. Methvin, Montgomery, AL, for Plaintiffs.

Clement C. Torbert, Jr., Peter S. Fruin, Montgomery, AL, A. Inge Selden, III, Carl S. Burkhalter, Birmingham, AL, Alan S. Kaplinsky, Steven A. Arbittier, Robert McL. Boote, Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is now before the court on the motion to remand filed on December 20, 1996, by the Plaintiffs Johnnie Mack Smith ("Smith") and Brenda D. Brooks ("Brooks"). Defendant Beneficial National Bank USA ("Bank") filed its response on January 7, 1997.[1] The Plaintiffs notified the court of additional support for their position on January 6, 1997, and the Bank responded on January 13, 1997. On January 17, 1997, the Plaintiffs filed a response in opposition to the Bank's request for certification of the remand issue.[2] After careful consideration of

---

1. The other Defendants in this action, C.A.M.P. Cable Concepts, Inc., and Shirley A. Allen, have not responded to the Plaintiffs' motion to remand.

2. The Bank's request for certification is contained within a portion of the Bank's response brief. Bank's Resp. Br. at 25–26. In light of its decision to remand this action, the court finds

the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Plaintiffs' motion for remand is due to be granted.

## Background

On July 5, 1994, Smith and Brooks purchased a satellite system in Macon County, Alabama. They allege that Defendant Shirley A. Allen promised that the satellite system would be paid for after five years of $67.00 per month payments, that service and maintenance would be provided at no cost, and that one year of free programming would be provided. Smith and Brooks allege that these promises were false and that they were damaged as a result of these misrepresentations. The Plaintiffs filed an eleven-count complaint on October 15, 1996, in the Circuit Court of Macon County, Alabama, alleging various forms of fraud, improper hiring, improper supervision and that the Defendants allowed their agents to commit fraud.[3] On November 20, 1996, the Bank filed a notice of removal contending that the Plaintiffs's state law claims are completely preempted by §§ 85–86 of the National Bank Act of 1864 ("NBA"), 12 U.S.C.A. §§ 21 et seq.[4] In their motion for remand the Plaintiffs argue that the court lacks jurisdiction over this action because the NBA does not completely pre-empt their state law claims.

## Discussion

It is well-settled that the defendants, as the parties removing an action to federal court, have the burden of establishing federal jurisdiction. *Sullivan v. First Affiliated Secs. Inc.*, 813 F.2d 1368 (9th Cir.1987), *cert. denied*, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). Because the removal

statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand. *See Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Butler v. Polk*, 592 F.2d 1293 (5th Cir.1979)[5]; *Paxton v. Weaver*, 553 F.2d 936 (5th Cir.1977).

■■■ Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. 28 U.S.C.A. § 1441(a). Federal question jurisdiction depends on whether the "action aris[es] under the Constitution, laws or treaties of the United States." 28 U.S.C.A. § 1331. Under the well-pleaded complaint rule, a court must look to the face of the complaint to determine whether a claim "arises under" federal law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). Therefore, the plaintiff " 'may avoid federal jurisdiction by exclusive reliance on state law.' " *Sexton v. Principal Financial Group*, 920 F.Supp. 169, 173 (M.D.Ala.1996) (quoting *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429; *Burke v. Humana Ins. Co.*, No. 95–T–299–N, slip op. at 4, 1995 WL 841678 (M.D.Ala. May 11, 1995)). Additionally, removal jurisdiction cannot be maintained "simply because a plaintiff could have asserted a federal claim instead of or in addition to the state claim advanced." *Giddens v. Hometown Fin. Servs.*, 938 F.Supp. 801, 804 (M.D.Ala.1996) (Albritton, J.) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986)). Moreover, a federal defense is an insufficient

---

that the Bank's certification motion is due to be denied.

3. The court can find no reference by the Bank to the Plaintiffs' claims involving issues other than the fraud allegations. For instance, the court has found no reference to the Plaintiffs' claims of improper hiring or improper supervision.

4. Section 85 of the NBA defines the appropriate rate of interest that a national bank may charge its customers as "the rate allowed by the laws of the State [ ] where the bank is located." *See also M. Nahas & Co., Inc. v. First Nat'l Bank*, 930 F.2d 608, 610 (8th Cir.1991). Section 86 of the NBA provides civil remedies for national banks

charging interest at a rate greater than that allowed in § 85. *See also id.* Section 86 explains "precisely what remedies are available against a national bank for usury, in order to promote remedial uniformity and to protect national banks from destructive usury penalties frequently available under state law." *Id.* (citation omitted).

5. Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

basis for removing an action to federal court. *Id.*

■ The court finds that Smith and Brooks' complaint raises only state law claims. On its face, the complaint does not implicate any of the NBA civil liability provisions. Likewise, the fact that the Bank has a preemption defense under the NBA does not support removal. *See id.* Therefore, it appears that under the well-pleaded complaint rule, Smith and Brooks' complaint was not properly removed. However, there is an exception to the well-pleaded complaint rule. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. This exception is known as the "complete pre-emption" doctrine and operates to convert any claim purportedly based on state law into a federal claim which arises under federal law. *Id.* Therefore, if Smith and Brooks' claims are completely pre-empted by the provisions of the NBA, then this action would be properly removed from the Circuit Court of Macon County.

■ The Supreme Court has found "complete pre-emption" of state law claims in only limited instances. *See Hagler v. Beneficial Nat'l Bank USA,* No. 96–T–1492–N (M.D.Ala. Jan. 2, 1997) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1132, completely pre-empts state law claims); *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (holding that § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C.A. § 185, completely pre-empts state law claims)). The Supreme Court has identified three factors necessary for a finding of "complete pre-emption:" (1) congressional intent, (2) displacement of the state law claim with a federal cause of action, and (3) a close parallel between the federal statute in question and the provisions of ERISA or LMRA. *See Metropolitan,* 481 U.S. at 63–67, 107 S.Ct. at 1546–48; *Kenney v. Farmers Nat'l Bank,* 938 F.Supp. 789, 792–93 (M.D.Ala. 1996).

Several courts have previously considered state law claims in light of the NBA, and their decisions have been sharply divided.

One group of courts has found that the NBA completely pre-empts state law actions claiming a variety of excessive charges relating to bank loans or credit cards. *See e.g., M. Nahas & Co., Inc. v. First Nat'l Bank,* 930 F.2d 608 (8th Cir.1991) (holding that plaintiff's claim seeking to recover allegedly excessive loan interest was completely pre-empted by the NBA); *Hunter v. Rich's Department Stores,* 945 F.Supp. 1500 (N.D.Ala. 1995) (finding complete preemption when plaintiffs claimed that credit card late fees violated state law); *Watson v. First Union Nat'l Bank,* 837 F.Supp. 146 (D.S.C.1993) (finding that plaintiff's claim that defendants charged excessive credit card overlimit fees was completely pre-empted by the NBA); *Goehl v. Mellon Bank,* 825 F.Supp. 1239 (E.D.Pa.1993) (finding that excessive credit card late fee claim was completely preempted by the NBA); *Ament v. PNC Nat'l Bank,* 825 F.Supp. 1243 (W.D.Pa.1992) (finding that state law claims concerning credit card late payment charges, returned check charges, overlimit charges, overdraft fees, and late fees were completely preempted by the NBA). In the other camp are several decisions which have found that actions were improperly removed to federal court because complete pre-emption did not affect the state law claims. *See e.g., Hagler,* No. 96–T–1492–N (finding that a state claim based upon a fraudulent failure to disclose certain interest charges and discounts is not completely pre-empted by the NBA because such claims do not involve interest "rates"); *Kenney,* 938 F.Supp. 789 (finding that state law claims based upon bank's collection of insurance premiums were not completely pre-empted because insurance premiums are not covered by the NBA); *Hunter v. Beneficial Nat'l Bank USA,* 947 F.Supp. 446 (M.D.Ala.1996) (To be reported at: 947 F.Supp. 446) (finding that state law claims alleging fraud are not completely pre-empted by the NBA because there was no evidence that undisclosed interest was excessive under any state law); *Giddens,* 938 F.Supp. 801 (finding that state fraud claims dealing with insurance premiums are not completely pre-empted by the NBA because insurance premiums are not covered by the definition of interest promul-

gated by the Comptroller of the Currency and approved by the Supreme Court in *Smiley v. Citibank, N.A.,* — U.S. ——, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996)); *Harris v. First Tenn. Bank N.A.,* 96–C–1456–N (M.D.Ala. Dec. 4, 1996) (Carroll, Mag. J.) (finding that state law fraud claims were not completely pre-empted by NBA because claims did not allege excessive interest rates). The chief distinction among these two lines of opinions is the subject matter of the plaintiff's claim. In the line of cases alleging excessive interest rates, overlimit fees, returned check charges, and late payment fees, the courts found complete pre-emption; while in actions involving insurance premiums or fraudulent fees or charges, the courts rejected complete pre-emption.

These outcomes parallel the definition of "interest" as promulgated by the Comptroller of the Currency. The definition includes "any payment compensating a creditor or prospective creditor for an extension of credit" which is "among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees." *Smiley,* — U.S. at ——, 116 S.Ct. at 1733 (quoting 61 Fed.Reg. 4869 (to be codified at 12 C.F.R. § 7.4001(a)). The decisions finding complete pre-emption have dealt with a specifically identified portion of the Comptroller's interest definition, while the group of decisions rejecting complete pre-emption have dealt with nonenumerated subjects.

Although the connection between the Comptroller's definition of interest and the three-part complete pre-emption test is often not clear, the definition is the gateway through which courts determine the application of the NBA to the state claims at issue and subsequently use in their evaluation of the three element test. In particular, the definition impacts the second test element which asks if the federal claim displaces the completely pre-empted state law claim. In other words, if a state law claim deals with a subject covered by the interest definition, then the NBA provides a federal remedy for that claim and displaces the state law action. Otherwise, the NBA would not provide analogous federal protection for the alleged wrong and the claimant would be left without a remedy. For instance, insurance premiums are not covered by the definition of interest, and if a state claim based upon insurance premiums was completely pre-empted, the NBA excessive interest provisions would be impotent to stop the alleged wrongful act. *See Kenney,* 938 F.Supp. at 793; *Giddens,* 938 F.Supp. at 806–07.

■ The Comptroller's definition likewise fails to mention fraudulent charges. *See Hunter,* 947 F.Supp. at 451–52; *Harris,* 96–C–1456–N, slip op. at 9. Therefore, the court finds that undisclosed charges are not part of the Comptroller's definition of interest under the NBA. The Bank seeks to skirt this shortcoming by arguing that these alleged undisclosed charges are "excessive interest" as defined by § 86 by virtue of Delaware state law.[6] The Bank argues that "[t]he interest rate structure of the Delaware Banking Code is fundamentally premised on there being an *agreement* between the bank and its customer with respect to the interest that the customer will pay." Bank's Resp. Br. at 24. Therefore, according to the Bank, unagreed to interest is both illegal and excessive. However, the Bank fails to support these assertions with citation to pertinent portions of the Delaware Banking Code.

Without a showing that undisclosed charges or unagreed to interest is covered by either the Delaware Banking Code or the NBA's definition of interest, the NBA has no impact on this action. Complete pre-emption of the Plaintiffs' state law claims would leave the Plaintiffs without a federal claim under the NBA. Since the state law claims would not be displaced by an analogous federal claim, the court finds that complete pre-emption is inappropriate. Additionally, complete pre-emption for undisclosed charges is not supported by Congressional intent and bears no similarity to the provisions of the LMRA and ERISA. *See Kenney,* 938 F.Supp. at 793–94; *Giddens,* 938 F.Supp. at

6. Section 86 references state banking laws through § 85's definition of allowable interest,

which is largely based upon allowable interest rates under state law.

807. For these reasons, the court finds that it lacks jurisdiction over this matter and the Plaintiffs' motion to remand is due to be granted.

However, this conclusion does not preclude a subsequent state court finding of pre-emption based upon the NBA. The court has merely held that complete pre-emption is not appropriate and that removal to federal court is improper. Following this remand, the state court may still determine that the NBA pre-empts the Plaintiffs' state law claims. *See Glasser v. Amalgamated Workers Union Local 88,* 806 F.2d 1539, 1540 (11th Cir.1986)(per curiam); *Soley v. First Nat'l Bank of Commerce,* 923 F.2d 406, 408–09 (5th Cir.1991); *see also Giddens,* 938 F.Supp. at 807; *Kenney,* 938 F.Supp. at 794.

Accordingly, it is CONSIDERED and ORDERED that Plaintiffs' motion to remand be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that the Bank's motion for certification is hereby DENIED. The Clerk of the Court is DIRECTED to take the appropriate steps to effectuate said remand.