**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 1 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DANIELLE ESTRADA; ROBERT HERNANDEZ; ARMANDO SANCHEZ; STEVEN SPERLING; MARCINELLA CALL; SHIRLEY NELSON, | No. 15-15133 |
| Plaintiffs-Appellants, | D.C. No. 4:14-cv-04465-DMR |
| v. | MEMORANDUM[*] |
| KAISER FOUNDATION HOSPITALS; THE PERMANENTE MEDICAL GROUP, INC.; KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Donna M. Ryu, Magistrate Judge, Presiding

Argued and Submitted December 16, 2016
San Francisco, California

Before: HAWKINS, BERZON, and MURGUIA, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiffs-Appellants ("Plaintiffs") appeal the district court's order denying Plaintiffs' motion to remand on the grounds that Plaintiffs' California state law claims were preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301"). We review de novo the denial of a motion to remand, *Or. Bureau of Labor & Indus. v. U.S. W. Commc'ns, Inc.*, 288 F.3d 414, 417 (9th Cir. 2002), and a district court's finding of Section 301 preemption, *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Section 301 "preempts the use of state contract law in [collective bargaining agreement ("CBA")] interpretation and enforcement." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Cramer*, 255 F.3d at 689). If the asserted state law cause of action involves a right that exists independently of the CBA, which is undisputed in this case, then we consider whether the state law claim is "substantially dependent on analysis of a collective-bargaining agreement." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting *Caterpiller Inc. v. Williams*, 482 U.S. 386, 394 (1987)). To determine whether a claim is substantially dependent on analysis of a CBA, the court must analyze "whether the claim can be resolved by *looking to* versus

2

*interpreting* the CBA. If the latter, the claim is preempted; if the former, it is not." *Id.* at 1060 (emphasis added) (alterations, internal quotation marks, and citation omitted). We focus on the allegations in the complaint in determining whether a claim is preempted. *See Caterpillar Inc.*, 482 U.S. at 398–99.

Here, the relevant CBAs relied upon in the complaint are a series of National Agreements, negotiated and agreed to by Kaiser and a coalition of local labor unions, which refer to Local Agreements, negotiated and agreed to by Kaiser and the local union that represents Kaiser's California employees, including Plaintiffs. Section 2.A.1 of each of the National Agreements provides across-the-board yearly wage increases of between 3% and 5%. Section 1.B.3 of the National Agreement, the so-called "LMP Trust Provision," states: "[a]n amount equal to nine cents per hour per employee will be contributed to the [LMP Trust] throughout the term of this Agreement, consistently across the Program."[1]

Plaintiffs filed a class action in California state court against Kaiser, alleging

---

[1] This language reflects the 2012 National Agreement. The 2005 and 2010 versions of the National Agreement read: "An amount equal to nine cents per hour per employee will continue to be contributed to the Partnership Trust throughout the term of this Agreement, using the current or jointly acceptable alternative methodologies." The relevant Local Agreements, which the complaint does not specifically mention, contain tables setting forth "[N]egotiated [W]age [R]ates" for each of Kaiser's California positions.

violations of California Labor Code §§ 222 and 226.  Plaintiff's theory is that the LMP Trust Provision constitutes an unlawful deduction under California Labor Code § 222, and that the $.09-per-hour contribution was not listed on Plaintiffs' wage statements, in violation of California Labor Code § 226.  Plaintiffs further allege that this practice constituted a violation of the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq*.  After Kaiser removed the case to federal court, the district court denied Plaintiffs' motion to remand and concluded that Section 301 preempted Plaintiffs' state law claims.  We affirm.

We conclude that resolving Plaintiffs' claims as alleged would require a court to interpret the CBA.

1.  California Labor Code § 222 makes it unlawful "in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee . . . to withhold from said employee any part of the wage agreed upon."  Identifying the "wage agreed upon" is therefore a necessary first step to resolve Plaintiffs' section 222 claim.  Plaintiffs allege that the "wage agreed upon" can be discerned from the National Agreement.  They claim that "[t]he agreed-upon wage terms of the 2005, 2010 and 2012 National

4

Agreements are stated in section 2.A.1 of each agreement as across-the-board wage increases of a specific percentage" and that the terms of the National Agreements concerning the LMP Trust Provisions indicate that the employees are responsible for the $.09-per-hour contribution. Plaintiffs further allege that the National Agreements "superseded their local collective bargaining agreements," except where local agreements provided superior wages or benefits. Kaiser, on the other hand, argues that the $.09-per-hour contribution was one of several factors used to calculate the agreed-upon wage, which is set forth in the Local Agreement's Negotiated Wage Rates tables.

Because the complaint advances a contested interpretation of the National Agreement, resolving the parties' dispute requires the court to interpret how the National and Local Agreements interact with each other and, more specifically, to determine what combination of the LMP Trust Provision (National Agreement Section 1.B.3), across-the-board percentage wage increase provision (National Agreement Section 2.A.1), and Negotiated Wage Rates table in the Local Agreement constitutes the wage the parties agreed would be paid. Thus, resolving the parties' dispute over whether the agreed-upon wage is set forth in the National Agreement's across-the-board wage increases or in the Local Agreement's

5

"Negotiated Wage Rates" would require interpreting the parties' CBAs. *See, e.g.,* *Kobold*, 832 F.3d at 1035–36 (noting that the state statute at issue requires employees to be paid "the wages due and owing to them," but that the statute fails to "provide any means with which to assess *whether* wages are 'due and owing,'" and concluding that "because of a particular provision of the [] CBA that is in dispute, a court must interpret, not just refer to or look at, the [] CBA"). Since a court must interpret the parties' CBA to resolve Plaintiffs' section 222 claim, Section 301 preempts the section 222 claim. *Burnside*, 491 F.3d at 1059–60.

2. Resolving Plaintiffs' section 226 claim would also require a court to determine whether the LMP Trust Provision was a deduction from the agreed-upon wage or a factor in determining the agreed-upon wage. As described above, this analysis would require interpretation of the CBA. The section 226 claim is therefore preempted. *See Burnside*, 491 F.3d at 1059–60.

3. Finally, since Plaintiffs allege in their complaint that the sections 222 and 226 violations form the basis of Plaintiffs' UCL claim, the UCL claim is derivative of the sections 222 and 226 claims. Given that the sections 222 and 226 claims are preempted, the derivative UCL claim also fails. *See, e.g., Alcantar v. Hobart*

6

*Serv.*, 800 F.3d 1047, 1051 (9th Cir. 2015) (acknowledging UCL claims that derive from violations of the California Labor Code).

**AFFIRMED.**