Filed 9/1/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTINE HERRERA et al., | F080963 |
| Plaintiffs and Respondents, | (Super. Ct. No. CV-19-006126) |
| v. | |
| DOCTORS MEDICAL CENTER OF MODESTO, INC., | **ORDER MODIFYING OPINION** [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

**THE COURT:**

It is hereby ordered that the published opinion filed on August 5, 2021, be modified as follows:

1.      On page 8, last sentence of the second full paragraph, the word "his" is changed to "its."

2.      On page 10, the first paragraph beginning "To compel arbitration" is deleted and the following paragraph is inserted in its place:

> To compel arbitration of the PAGA representative claims pursuant to the individual acknowledgements signed by plaintiffs in 2010, defendant must establish (1) the acknowledgements' arbitration provisions are worded broadly enough to encompass the PAGA representative claims and (2) the arbitration agreements are enforceable as to the PAGA claims despite the fact the agreements were not signed or otherwise adopted on behalf of the state.

3. On page 10, in the first sentence of the second paragraph, the word "requirement" is changed to "issue" and the word "here" is inserted between the words "detail" and "because," so the sentence now reads:

> The first issue is not addressed in detail here because we assume without deciding that the PAGA representative claims alleged by plaintiffs are covered by the agreement to use defendant's FTP and "submit to final and binding arbitration … any and all claims and disputes that are related in any way to my employment."

4. On page 10, the first sentence of the third paragraph beginning "The requirement that" is deleted and replaced with the following two sentences:

> The second issue presents a question of California law about whether an employee's predispute agreement to arbitrate PAGA representative claims is enforceable when the state is not a party to the agreement. This legal question has been resolved many times and the analysis used typically begins with an interpretation of *Iskanian*, *supra*, 59 Cal.4th 348.

There is no change in judgment.

FRANSON, Acting P. J.

WE CONCUR:

PEÑA, J.

DE SANTOS, J.

2.

Filed 8/5/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTINE HERRERA et al., | F080963 |
| Plaintiffs and Respondents, | (Super. Ct. No. CV-19-006126) |
| v. | |
| DOCTORS MEDICAL CENTER OF MODESTO, INC., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Roger M. Beauchesne and Sonny S. Sandhu, Judges.*

Hill, Farrer & Burrill, Michael S. Turner and E. Sean McLoughlin for Defendant and Appellant.

Cohelan Khoury & Singer, Michael D. Singer, Rosemary C. Khoury; United Employees Law Group and Walter L. Haines for Plaintiffs and Respondents.

-ooOoo-

Defendant Doctors Medical Center of Modesto, Inc., appeals from an order denying its petition to compel arbitration of Labor Code claims pursued by former employees.  The former employees contend their lawsuit is limited to recovering civil penalties under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et

---

*        The matter was heard and decided in December 2019 by Judge Beauchesne.  In January 2020, Judge Sandu signed and filed the written order.

seq.)[1] and their arbitration agreements cannot be enforced to compel arbitration of the PAGA representative claims.

We again interpret the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) to mean "that PAGA *representative* claims for *civil penalties* are not subject to arbitration" under a predispute arbitration agreement. (*Esparza v KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1234 (*Esparza*).) The PAGA claims alleged in the former employees' complaint are owned by the state and are being pursued by the former employees as the state's agent or proxy. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185 (*ZB, N.A.*).) The arbitration agreements in question are not enforceable as to the PAGA claims because the state was not a party to, and did not ratify, any of those agreements. Also, after the former employees became representatives of the state, they did not agree to arbitrate the PAGA claims. Consequently, under the rule of California law recognized in *Esparza* and many other decisions of the Court of Appeal, the PAGA claims cannot be forced into arbitration based on agreements made by the former employees before they became authorized representatives of the state. The trial court correctly applied this rule of law.

Defendant's argument that arbitration is compelled by the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) and federal preemption fails for similar reasons. In *Iskanian*, our Supreme Court addressed the scope of the FAA and concluded that "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship." (*Iskanian*, *supra*, 59 Cal.4th at p. 386.) Based on this precedent, we conclude the FAA does not reach the PAGA claims alleged in this case and, therefore, federal law does not preempt the rule of California law stating PAGA claims are subject to arbitration only if the state, or the state's authorized representative, consents to arbitration.

---

**1**      Unlabeled statutory references are to the Labor Code.

We therefore affirm the order denying the petition to compel arbitration.

## FACTS

Doctors Medical Center of Modesto, Inc., (defendant) is a California corporation that owns and operates Doctors Medical Center in Modesto, an acute care hospital. Defendant is a subsidiary of Tenet Healthcare Corporation, which owns and operates health care facilities in California, Texas, Louisiana and other states. Defendant is engaged in interstate commerce because, among other things, it purchases equipment, materials and supplies from out-of-state manufacturers and suppliers.

Plaintiff Christine Herrera was employed by defendant in 1986 and worked there until 2008. In 2010, she returned and worked on defendant's staff as a registered nurse and a member of a union, the California Nurses Association. In 2011, Herrera became a shift manager, which is a nonunion position. She remained in that position until her resignation in June 2018.

Plaintiff Geri Rothstein worked for defendant from 1998 to 2006. In 2010, she returned and worked on defendant's staff as a registered nurse. Rothstein also was a member of the California Nurses Association. In July 2014, Rothstein was promoted to shift manager, a nonunion position. As a result, she stopped paying union dues and was no longer a member of any union. Rothstein served as a shift manager until her resignation in July 2018.

_Collective Bargaining Agreement_

Since 2006, registered nurses employed by defendant have been represented by the California Nurses Association, which negotiated a series of collective bargaining agreements (CBA) with defendant. As a result, defendant's registered nurses were not "at will" employees, but were protected by CBA provisions that limited defendant's right to discipline or discharge registered nurses.

In 2010, when plaintiffs returned to work for defendant, a three-year CBA covering January 1, 2007, through December 31, 2010, was in place. Article 9 of that

3.

CBA included a mandatory grievance and arbitration procedure for any dispute involving the interpretation, meaning or application of any of the CBA's provisions. Paragraph E of article 9 of the CBA allowed individual registered nurses to voluntarily agree to arbitrate "any dispute not otherwise arbitrable under the" CBA using "the Tenet Fair Treatment Process ('FTP')." It also stated: "No retaliation or adverse action may be taken against anyone who exercises the option not to sign the FTP." The grievance and arbitration provisions were also included in article 9 of the CBA covering January 1, 2015, through December 31, 2018.

*Individual Agreements*

In 2010, when plaintiffs returned to work for defendant, they signed a one-page "ACKNOWLEDGEMENT" stating they (1) had received information about how to access an electronic copy of the defendant's employee handbook; (2) had received a hard copy of the FTP; (3) voluntarily agreed to use the FTP by submitting to final and binding arbitration "any and all claims and disputes that are related in any way to my employment or the termination of my employment"; (4) agreed the arbitration would be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association; and (5) acknowledged the agreement to arbitrate "may not be modified or rescinded except in writing by both me and the Company."

A document named "Open Door Policy and Fair Treatment Process" states "[t]he FTP applies to all employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with the Company or the termination of employment. The only disputes or claims not covered by the FTP are those listed in the 'Exclusions and Restrictions' section below." It also advises employees that the "mutual agreement to arbitrate claims means that both the employee and the Company are bound to use the FTP process as the only means of resolving employment-related disputes, and thereby agree to forego any right they each may have had to a jury trial on issues covered by the FTP." The document also describes the five

steps that comprise the FTP. The description of the fifth step—final and binding arbitration—addresses class, representative or group action, stating:

> "The employee understands and agrees that to the extent permitted by law, his or her claim will not be joined with any claim or dispute of another employee in a class, collective, *representative* or group action. Arbitration under the Fair Treatment Process *is limited to individual disputes, claims or controversies* that a court of law would be authorized or have jurisdiction over to grant relief." (Italics added.)

Whether the PAGA representative claims alleged by plaintiffs are subject to this limitation on arbitration was not addressed in the appellate briefing. We did not seek supplemental briefing of the issue (Gov. Code, § 68061) because there are other grounds for affirming the trial court's denial of arbitration.

*PAGA Notice*

On May 17, 2019, counsel for plaintiffs mailed a written notice to the Labor and Workforce Development Agency and defendant pursuant to section 2699.3. The notice stated plaintiffs were former employees of defendant aggrieved by defendant's Labor Code violations. The notice alleged defendant "failed to pay all wages, including premium wages for overtime hours worked; failed to provide legally compliant meal and rest breaks; failed to adequately inform Claimants of their right to off-duty meal and rest periods; failed to reimburse Claimants and other aggrieved employees for business expenses incurred in the discharge of their duties for [defendant]; failed to provide accurate itemized wage statements; and failed to pay all wages due during and upon separation of employment."

In response to the PAGA notice, defendant did not provide a notice of cure of the alleged violations. The Labor and Workforce Development Agency did not provide a notice of investigation within 65 days after the PAGA notice was mailed. Pursuant to section 2699.3, subdivision (a)(2)(A), when the agency does not provide notice of its intent to investigate within the 65-day period, "the aggrieved employee may commence a

5.

civil action pursuant to Section 2699." Section 2699, subdivision (a) provides any civil penalty under the Labor Code collectable by the Labor and Workforce Development Agency "may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

## PROCEEDINGS

In August 2019, plaintiffs filed a "REPRESENTATIVE ACTION COMPLAINT" against defendant seeking civil penalties under PAGA for violations of Labor Code provisions governing wages, meal periods, rest periods, reimbursement of business expenses, and accurate wage statements. In October 2019, venue was transferred from Orange County to Stanislaus County.

In November 2019, defendant filed a petition to compel arbitration and stay the lawsuit. The petition was based on the arbitration provisions in the CBA and the one-page "ACKNOWLEDGMENT" signed by each plaintiff. Plaintiffs opposed the petition and submitted supporting declarations. Defendant filed a reply and submitted evidentiary objections to the declaration of plaintiffs' counsel.

In December 2019, Judge Beauchesne heard the petition to compel. At the hearing, defense counsel described the court's tentative ruling as beginning with the court's determination that California law prevented the court from enforcing a predispute arbitration agreement when the action asserted PAGA claims. After counsel presented their arguments and the matter was submitted, Judge Beauchesne confirmed his tentative ruling in its entirety. In January 2020, Judge Sandu signed and filed the written order prepared by plaintiff's counsel. Defendant timely appealed.

Nine days after defendant filed its notice of appeal, plaintiffs moved for calendar preference and an expedited briefing schedule pursuant to Code of Civil Procedure section 1291.2 and California Rules of Court, rule 8.240. In April 2020, this court granted calendar preference without an expedited briefing schedule. Subsequently, the

6.

parties stipulated to extensions of time to file the appellant's opening brief, the respondents' brief, and the appellant's reply brief. In April 2021, the case was fully briefed.

## DISCUSSION

### I. FEDERAL LABOR LAW PREEMPTION

Defendant contends section 301 of the Labor Management Relations Act of 1947 (LMRA; 29 U.S.C. § 185) preempts the PAGA claims premised on a Labor Code violation allegedly suffered by CBA-covered employees and involving the interpretation or application of any of the CBA's provisions. Defendant asserts the trial court failed to discuss the CBA or section 301 of the LMRA and plainly failed to enforce the collectively bargained obligation to grieve and arbitrate certain disputes under article 9 of the CBA. During oral argument, defense counsel asserted the California appellate courts have not addressed the preemption of PAGA claims by the LMRA and urged this court to follow federal cases addressing preemption by the LMRA. (See *Estrada v. Kaiser Foundation Hospitals* (9th Cir. 2017) 678 Fed.Appx. 494, 497 [claims for violations of § 222 and § 226 required court to interpret the CBA and, therefore, were preempted by LMRA § 301]; *Bradford v. Professional Technical Security Services Inc. (Protech)* (N.D.Cal., May 27, 2020, No. 20-CV-02242-WHO) 2020 U.S. Dist. LEXIS 92535 [PAGA claim for violating § 204's timely payment of wages requirement preempted by the LMRA because the CBA provided for payment arrangements different from § 204's default requirements; PAGA claim for violations of §§ 226.7 and 512, subd. (a) were not preempted and were remanded to state court].)

Plaintiffs assert that from 2014 until they resigned, they worked as shift managers and not staff registered nurses covered by the CBA. Based on these factual assertions, plaintiffs contend they were not subject to any CBA during the liability period at issue in this case and, therefore, the LMRA does not preempt the PAGA claims. They also

7.

contend defendant's conclusory argument fails to demonstrate the PAGA claims require an interpretation of the CBA.

Under well-established principles of California's constitutional doctrine of reversible error, an order of the lower court is presumed correct—that is, all intendments and presumptions are indulged to support it on matters as to which the record is silent—and the appellant must affirmatively demonstrate prejudicial error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Appellants fail to carry the burden of affirmatively demonstrating error if they, among other things, do not provide an adequate record on appeal or do not comply with certain briefing requirements in California Rules of Court, rule 8.204.

First, the appellants' appendix does not include a copy of the trial court's tentative ruling. That ruling is significant because, at the end of the December 17, 2019, hearing, Judge Beauchesne stated: "The Court confirms its tentative ruling initially issued in its entirety." Lacking a copy of the tentative ruling, we cannot determine the accuracy of defendant's contention that the "court failed to discuss the CBA or section 301 of the LMRA." "Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Consequently, to the extent defendant contends the trial court erred in failing to consider or explicitly discuss defendant's theory of preemption by the LMRA, the lack of an adequate record compels us to conclude appellant failed to carry his burden of affirmatively demonstrating such an error occurred.

Second, assuming the trial court did not explicitly discuss the CBA and preemption by the LMRA, the applicable principles of appellate practice would require that we presume the court impliedly found the CBA did not apply to the claims pursued in this lawsuit and, thus, concluded the LMRA did not preempt the PAGA claims. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 [under

doctrine of implied findings, appellate court presumes trial court made all necessary findings supported by substantial evidence].)  This implied finding of fact is supported by substantial evidence—namely, the declarations submitted by plaintiffs.  Those declarations stated that Hererra and Rothstein became shift managers in 2011 and July 2014, respectively, and shift managers are nonunion employees.  Therefore, sufficient evidence supports the finding that plaintiffs were not covered by the CBA or its grievance procedures when the wrongs alleged in this lawsuit occurred.  Defendant's appellate briefing made no attempt to address this implied finding and presented no analysis affirmatively demonstrating the complaint seeks to recover civil penalties for violations of the Labor Code occurring before July 2014.

Third, California Rules of Court, rule 8.204(a)(1)(B), provides that a brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179; see *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 835–836 [appellants forfeited challenge to trial court's ruling on a particular issue by failing to address it in their opening brief]; *Richard v. Richard* (1954) 123 Cal.App.2d 900, 902–903.)  Here, the headings in the argument section of the appellant's opening brief did not raise preemption by the LMRA.  The heading in the appellant's reply brief stating LMRA section 301 preempts PAGA claims does not remedy the opening brief's omission.  "It is elementary that points raised for the first time in a reply brief are not considered by the court." (*Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1486.)

Based on the multiple failures of defendant to affirmatively demonstrate the trial court erred in impliedly rejecting defendant's arguments about preemption under the LMRA, we conclude those arguments provide no ground for reversing the order denying defendant's petition to compel arbitration.

9.

II.	ARBITRATION OF PAGA CLAIMS

To compel arbitration of the PAGA representative claims pursuant to the individual acknowledgements signed by plaintiffs in 2010, two requirements must be met. First, defendant must show the acknowledgements' arbitration provisions encompass the PAGA claims because a court cannot compel arbitration of a dispute that falls outside the scope of the parties' contract to arbitrate. Second, defendant must establish the arbitration agreements are enforceable as to the PAGA claims despite the fact the agreements were not signed or otherwise adopted on behalf of the state.

The first requirement is not addressed in detail because we assume without deciding that the PAGA representative claims alleged by plaintiffs are covered by the agreement to use defendant's FTP and "submit to final and binding arbitration … any and all claims and disputes that are related in any way to my employment." (See *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553, fn. 1 [arbitration clause covering any claim arising out of or relating to the contract or its breach is very broad].) Based on this assumption, we need not decide whether the provision stating the FTP "is limited to *individual* disputes, claims or controversies" (italics added) excludes the PAGA representative claims from the broad arbitration clause.

The requirement that an employee's agreement to arbitrate PAGA representative claims be enforceable raises issues about how *Iskanian*, *supra*, 59 Cal.4th 348, should be interpreted. In that case, our Supreme Court concluded "that an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions *in any forum* is contrary to public policy." (*Iskanian*, *supra*, 59 Cal.4th at p. 360, italics added.) We interpreted this and other statements in *Iskanian* to mean "that PAGA *representative* claims for *civil penalties* are not subject to arbitration." (*Esparza*, *supra*, 13 Cal.App.5th at p. 1234.) In *Esparza*, the only arbitration agreement between the plaintiff employee and the defendant employer was contained in an employment application completed by the plaintiff. (*Id*. at p. 1235.)

10.

Based on when the arbitration agreement was made and the arguments presented in *Esparza*, our legal conclusion "that PAGA *representative* claims for *civil penalties* are not subject to arbitration" is necessarily limited to arbitration pursuant to a predispute arbitration agreement. (*Esparza*, *supra*, 13 Cal.App.5th at p. 1234.) We applied that legal conclusion in affirming the order denying the motion to compel arbitration "insofar as it denies arbitration of the PAGA representative claims seeking civil penalties that are paid, in whole or in part, to the Labor and Workforce Development Agency." (*Id.* at p. 1247.) In short, the arbitration agreement was not enforceable as to the PAGA claims.

Defendant adopts an interpretation of *Iskanian* different from the interpretation adopted in *Esparza*, contending *Iskanian* requires arbitration of PAGA claims and only prohibits enforcement of PAGA waivers. Defendant also criticizes various Court of Appeal decisions that, like *Esparza*, conclude a predispute arbitration agreement cannot be relied upon to compel arbitration of a PAGA representative claim. Those decisions did not cite *Esparza* and, therefore, can be interpreted as independently determining PAGA claims are not subject to arbitration under predispute arbitration agreements.

In *Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, Division Five of the Second District stated: "After *Iskanian*, several appellate courts have held that an individual PAGA plaintiff may not be required to arbitrate his or her PAGA claim. '[A]n employer cannot rely on an employee's predispute arbitration agreement to compel arbitration of a PAGA claim.' " (*Id.* at p. 472.) In *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, Division One of the Fourth District summarized the rationale for this conclusion: "Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." (*Id.* at p. 622.)

In *ZB, N.A.*, *supra*, 8 Cal.5th 175, the Supreme Court mentioned *Esparza*, but it was not among the Court of Appeal decisions explicitly disapproved. (*ZB, N.A., supra,* at

11.

pp. 188, 196, fn. 8.) Based on the lack of disapproval and the many other Court of Appeal decisions reaching the same conclusion as *Esparza*,[2] we again conclude a former employee who is authorized to pursue PAGA representative claims cannot be compelled to arbitrate those claims pursuant to a predispute arbitration agreement.

Here, the Labor and Workforce Development Agency did not consent to arbitration. Also, plaintiffs did not consent to arbitration after they became authorized to pursue the PAGA claims.[3] Therefore, the arbitration agreements signed by plaintiffs in 2010 cannot be enforced as to the PAGA claims asserted in the complaint.

## III. FAA PREEMPTION

Defendant contends FAA preemption requires the reversal of the trial court with directions to issue an order compelling arbitration. We disagree.

In *Iskanian*, our Supreme Court concluded "the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract." (*Iskanian*, *supra*, 59 Cal.4th at p. 360.) The court explained its determination by stating:

---

[2] *Winns v. Postmates Inc.* (July 20, 2021, A155717) __ Cal.App.5th __ [2021 Cal.App. LEXIS 590] [First District, Division 3]; *Rosales v. Uber Technologies, Inc.* (2021) 63 Cal.App.5th 937, petn. for review pending, petn. filed June 8, 2021, time for grant or denial of review extended to Sept. 3, 2021, S269214 [Second District, Division 8]; *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 992, review den. Jan. 20, 2021, S265736 [Fourth District, Division 1] (*Provost*); *Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477, 481, review den. Nov. 10, 2020, S264524 [Fourth District, Division 2]; *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 869-872, review den. Feb. 14, 2018, S246352 [Second District, Division 4]; *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 447-448, review den. May 24, 2017, S241247 [Fourth District, Division 2]; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 678, review den. Mar. 1, 2017, S239170 [First District, Division 5].

[3] Based on the theory that the former "employee acts as ' "the proxy or agent of the state's labor law enforcement agencies," ' (*ZB, N.A.*, *supra*, 8 Cal.5th at p. 185) an agreement to arbitrate the PAGA claims would not be enforceable unless it was made *after* the former employee became a PAGA authorized aggrieved employee (i.e., an agent of the state). (*Id*. at p. 185.)

"[A] PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code." (*Id.* at pp. 386–387.)

We conclude our Supreme Court's analysis of preemption under the FAA remains good law. (See *Contreras*, *supra*, 61 Cal.App.5th at p. 471; *Provost*, *supra*, 55 Cal.App.5th at p. 997 [*Epic Systems Corp. v. Lewis* (2018) __ U.S. __ [138 S.Ct. 1612, 200 L.Ed.2d 889] did not implicitly overrule *Iskanian*].) Furthermore, we conclude our Supreme Court's analysis applies with equal force to the principle of state law that a former employee who is authorized to pursue PAGA representative claims cannot be compelled to arbitrate the PAGA claims based on a predispute arbitration agreement. Consequently, federal preemption does not compel arbitration in this case because plaintiff's PAGA claims fall outside the FAA's coverage.

## DISPOSITION

The order denying the petition to compel arbitration judgment is affirmed. Plaintiffs shall recover their costs on appeal.

FRANSON, Acting P.J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.

13.